BOUTELL ET AL., DOING BUSINESS AS F. J. BOUTELL SERVICE CO., *v.* WALLING, WAGE AND HOUR ADMINISTRATOR.

No. 73. Argued October 9, 1945.—Decided February 25, 1946.

Submitted on brief for petitioners by *Harry G. Gault* and *Glenn M. Coulter.*

*Bessie Margolin* argued the cause for respondent. With her on the brief were *Acting Solicitor General Judson, William S. Tyson* and *Albert A. Spiegel.*

MR. JUSTICE BURTON delivered the opinion of the Court.

This suit was brought in the District Court of the United States for the Eastern District of Michigan, by the Administrator of the Wage and Hour Division, United States Department of Labor, to enjoin petitioners from violating the maximum hours provisions[1] of the Fair Labor

---

[1] "SEC. 7. (a) No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce—

    (1) for a workweek longer than forty-four hours during the first year from the effective date of this section,

    (2) for a workweek longer than forty-two hours during the second year from such date, or

    (3) for a workweek longer than forty hours after the expiration of the second year from such date,

unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 52 Stat. 1063, 29 U. S. C. § 207 (a).

Standards Act of 1938. 52 Stat. 1060, 29 U. S. C. § 201, *et seq.*

Petitioners are two of four partners doing business as F. J. Boutell Service Company, the other two not being subject to the jurisdiction of the District Court. The four partners are the sole stockholders of the F. J. Boutell Drive-Away Company, a Michigan corporation, engaged in the transportation of automobiles and army equipment in interstate commerce.

The employees of the Service Company involved in this suit are mechanics engaged in greasing, repairing, servicing and maintaining the transportation equipment owned and operated by the Drive-Away Company. The parties have stipulated and the trial court has found that the Service Company is engaged exclusively in rendering such service to the Drive-Away Company and such corporation "is an entity separate and distinct from" the Service Company.

The case presents two questions: (1) whether the employees of the Service Company are "engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce" within the meaning of the exemption clause, § 13 (a) (2);[2] and (2) whether they come within the exemption clause, § 13 (b) (1), which exempts from § 7[3] of the Act "any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204[4]

---

[2] "SEC. 13. (a) The provisions of sections 6 and 7 shall not apply with respect to . . . (2) any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce; . . ." 52 Stat. 1067, 29 U. S. C. § 213 (a) (2).

[3] See note 1 *supra*.

[4] "SEC. 204 (a) It shall be the duty of the Commission—

"(1) *To regulate common carriers* by motor vehicle as provided in this part, *and to that end* the Commission may *establish* reasonable

of the Motor Carrier Act, 1935." 52 Stat. 1068, 29 U. S. C. § 213 (b) (1). The District Court ruled against petitioners on both questions and granted the injunction sought by the Administrator. The Circuit Court of Appeals affirmed on both grounds. 148 F. 2d 329. We agree with those conclusions.

The amended findings of fact agreed to by the parties include the statement that the petitioners' employees "involved in this proceeding are mechanics engaged in greasing, repairing, servicing and maintaining the transportation equipment owned and operated by the F. J. Boutell Drive-Away Company . . ." No claim is made that these employees are not engaged in interstate commerce within the meaning of § 7 of the Fair Labor Standards Act. They are well within the requirement that they be "actually in or so closely related to the movement of the commerce as to be a part of it." *McLeod* v. *Threlkeld,* 319 U. S. 491, 497.[5]

---

requirements with respect to continuous and adequate service, transportation of baggage and express, uniform systems of accounts, records, and reports, preservation of records, qualifications and *maximum hours of service of employees,* and safety of operation and equipment.

"(2) *To regulate contract carriers* by motor vehicle as provided in this part, *and to that end* the Commission may *establish* reasonable requirements with respect to uniform systems of accounts, records, and reports, preservation of records, qualifications and *maximum hours of service of employees,* and safety of operation and equipment.

"(3) *To establish for private carriers* of property by motor vehicle, if need therefor is found, *reasonable requirements to promote safety of operation, and to that end prescribe* qualifications and *maximum hours of service of employees,* and standards of equipment. . . ." (Italics supplied.) 49 Stat. 546, 49 U. S. C. § 304 (a) (1) (2) (3).

[5] *Overstreet* v. *North Shore Corp.,* 318 U. S. 125, 130; *Overnight Motor Co.* v. *Missel,* 316 U. S. 572, 574. See also under the Federal Employers' Liability Act, *New York Central R. Co.* v. *Marcone,* 281 U. S. 345, 349; *Pedersen* v. *Delaware, L. & W. R. Co.,* 229 U. S. 146, 150; *New York, N. H. & H. R. Co.* v. *Walsh,* 223 U. S. 1, 6. Compare *Shanks* v. *Delaware, L. & W. R. Co.,* 239 U. S. 556, 560.

In answer to the first question, the record shows that these employees do not come within the exemption stated in § 13 (a) (2). This is so because their employer, the Service Company, supplies its services, including their services, exclusively to the Drive-Away Company which in turn uses those services in interstate commerce. The Drive-Away Company does not use their services for its own purposes as an ultimate consumer, beyond the end of the flow of goods in interstate commerce. Accordingly, the employees of the Service Company are not engaged in a retail or service establishment within the meaning of § 13 (a) (2) as interpreted in *Roland Electrical Co.* v. *Walling,* 326 U. S. 657, and *Martino* v. *Michigan Window Cleaning Co.,* 327 U. S. 173. Furthermore, substantially all of the servicing done by the Service Company is thus done in interstate commerce, whereas § 13 (a) (2) requires the greater part of it to be done in intrastate commerce if the employees rendering it are to be exempted under that provision.

The question whether the employees of the Service Company are to be exempted by virtue of § 13 (b) (1) turns upon whether the Interstate Commerce Commission has the "power to establish" maximum hours of service for them under § 204 (a) (1), (2) or (3) of the Motor Carrier Act, 1935,[6] now officially cited as Part II of the Interstate Commerce Act, 54 Stat. 919, 49 U. S. C. § 301, *et seq.* Whatever may be the precise scope of the Commission's "power to establish" hours of service, we hold that the Commission does not have that power over the men here concerned because the Commission's jurisdiction is limited to employees of "carriers" and the record here shows that the men in question are employees of the Service Company, which is not a carrier, rather than of the Drive-Away Company, which is a carrier. This is

---

[6] See note 4 *supra.*

true although the work these employees do is all supplied to the Drive-Away Company through the Service Company.

The Wage and Hour Division has found to its satisfaction the facts necessary to place these employees of the Service Company under its jurisdiction for the purposes of the Fair Labor Standards Act. The record contains no suggestion that the Interstate Commerce Commission or any other administrative body has found that these employees of the Service Company are or should be treated as employees of the Drive-Away Company for the purposes of the Interstate Commerce Act. This case, therefore, is decided upon the basis that the parties have stipulated and the trial court has found that these employees are employees of the partnership, the Service Company, which is the relationship established for them by the petitioners as their employers. See *Schenley Distillers Corp.* v. *United States,* 326 U. S. 432, for a case giving effect to certain other consequences under the Motor Carrier Act of a corporate arrangement chosen by the persons concerned as a means of carrying on their business. See also *Higgins* v. *Smith,* 308 U. S. 473, 477, for a different result under other circumstances.

In the absence of power in the Interstate Commerce Commission to establish the maximum hours of service of these employees, the provisions of the Fair Labor Standards Act as to their maximum hours of employment remain applicable to them.

It appears from the face of the Motor Carrier Act that § 204 refers only to the regulation of "carriers." Moreover, Section 226 of the Act (formerly numbered 225, 54 Stat. 929, 49 U. S. C. § 325), which authorizes investigations by the Commission as a basis for the regulation of the maximum hours of service of employees under § 204, refers only to investigations of the "maximum hours of

service of employees of all motor carriers and private carriers of property by motor vehicle . . ." [7] The legislative history of the section is reviewed in *United States* v. *American Trucking Assns.*, 310 U. S. 534, 544–550.

The Interstate Commerce Commission has written many decisions defining the limits of its authority to pre-

---

[7] "SEC. 225. The Commission is hereby authorized to investigate and report on the need for Federal regulation of the sizes and weight of motor vehicles and combinations of motor vehicles and of the qualifications and *maximum hours of service of employees of all motor carriers and private carriers of property by motor vehicle;* and in such investigation the Commission shall avail itself of the assistance of all departments or bureaus of the Government and of any organization of motor carriers having special knowledge of any such matter." (Italics supplied.)    49 Stat. 566, 49 U. S. C. § 325, renumbered as § 226 by 54 Stat. 929.

In discussing § 204 (a) (1), (2) and (3) and § 225 Senator Wheeler, sponsor of the Bill, said in explanation of it—

". . . the committee amended paragraphs (1) and (2) to confer power on the Commission to establish reasonable requirements with respect to the qualifications and maximum hours of service of *employees of common and contract carriers*, thus restoring provisions that were in the Rayburn bill, introduced in the Seventy-third Congress. . . .

"In order to make the highways more safe, and so that common and contract carriers may not be unduly prejudiced in their competition with peddler trucks and other private operators of motor trucks, a provision was added in subparagraph 3 giving the Commission authority to establish similar requirements with respect to the qualifications and hours of service of the *employees of such operators*. The exercise of this power with respect to the three classes of carriers is intended to be contingent upon the results of the comprehensive investigation of the need for regulation of this kind provided for in section 225. . . ." (Italics supplied.)    79 Cong. Rec. 5652. See also, p. 5660.

In the House of Representatives, Representative Pettengill read the following observation made by Joseph B. Eastman of the Interstate Commerce Commission—

"The bill . . . gives the Commission authority to prescribe maximum hours of service for the *employees of common carriers, contract carriers, and private carriers of property.* . . ." (Italics supplied.)    79 Cong. Rec. 12,229. See also, S. Rep. No. 482, 74th Cong., 1st Sess. (1935) p. 1.

scribe qualifications and maximum hours of service for employees of motor carriers under § 204 (a) (1), (2) and (3), but throughout these decisions it apparently has assumed that its jurisdiction is limited to employees of "carriers" which in turn are under the jurisdiction of the Commission. It has, for example, recognized its power to establish maximum hours of service for automobile maintenance mechanics of "carriers"[8] but at the same time has said—

"By far the larger proportion of the carriers subject to our jurisdiction operate less than 10 vehicles and do not employ mechanics to repair their vehicles, but on the contrary have such work done in commercial garages. *We have, of course, no jurisdiction over employees working in commercial garages.*" (Italics supplied.) *Ex parte No. MC–2, In the Matter of Maximum Hours of Service of Motor Carrier Employees,* 28 M. C. C. 125, 132.

The Administrator of the Wage and Hour Division of the Department of Labor has interpreted § 13 (b) (1) of the Fair Labor Standards Act consistently with the interpretation given to it by the Interstate Commerce

---

[8] "Our findings of fact and conclusions of law are as follows:

*"Findings of fact.*—1. That mechanics employed by common and contract carriers and private carriers of property by motor vehicle, subject to part II of the Interstate Commerce Act, devote a large part of their time to activities which directly affect the safety of operation of motor vehicles in interstate or foreign commerce. . . .

*"Conclusions of law.*— . . .

"3. That we have power, under section 204 (a) of said part II, to establish qualifications and maximum hours of service for the classes of employees covered by findings of fact numbered 1, 2, and 3 above, [mechanics, loaders and helpers employed by carriers] and that we have no such power over any other classes of employees, except drivers." *Ex parte No. MC–2,* 28 M. C. C. 125, 138–139. See also *Ex parte No. MC–2,* 3 M. C. C. 665, 667; 6 M. C. C. 557; 11 M. C. C. 203; *Ex parte No. MC–28, Jurisdiction Over Employees of Motor Carriers,* 13 M. C. C. 481, 488; *Ex parte No. MC–3, Motor Carrier Safety Regulations—Private Carriers,* 23 M. C. C. 1, 8.

Commission.[9] The interpretation of this Act by each of these agencies is entitled to great weight. *United States* v. *American Trucking Assns.,* 310 U. S. 534, 549.

Throughout the discussion of these sections by this Court in *United States* v. *American Trucking Assns., supra,* and in *Southland Gasoline Co.* v. *Bayley,* 319 U. S. 44, it is assumed that they refer to employees of "carriers" and of "motor vehicle operators" which are themselves under the jurisdiction of the Interstate Commerce Commission, and there is nothing in either case to indicate an interpretation by this Court that the exemption prescribed in § 13 (b) (1) extends to workers whose services affect the safety of operations of motor vehicle carriers but who are not themselves employees of a carrier.

In this view of this case, it is not necessary to determine what kind of a carrier the Drive-Away Company is or even whether it is a carrier within the meaning of the Motor Carrier Act because the employees involved in this case are not its employees. Similarly, it is not necessary to determine which of the employees of the Service Company do work which affects the safety of the operation

---

[9] See Interpretative Bulletin No. 9, Wage and Hour Division, Office of the Administrator, originally issued March, 1939, 5th Rev., October, 1943. 2 C. C. H. Labor Law Service, ¶ 32,109. Where motor vehicle drivers or mechanics are employed by companies engaged in certain types of interstate transportation over which the Interstate Commerce Commission disclaims jurisdiction, they are held to be covered by the Fair Labor Standards Act. For example, if such employees are engaged in the transportation in interstate commerce of consumable goods, such as food, coal and ice, to railroads and docks for use in trains and steamships, jurisdiction over them is disclaimed by the Commission but is accepted by the Wage and Hour Division as covered by the Fair Labor Standards Act. Interpretative Bulletin No. 9, *supra,* Par. 6 (b). The Wage and Hour Division also accepts jurisdiction over employees engaged in the transportation of mail in interstate commerce who are employed, not by the carrier, but by a contractor dealing directly with the Post Office Department. *Id.,* Par. 7 (b).

of motor vehicles because that classification applies to employees whose hours are regulated by the Interstate Commerce Commission and not to those whose hours are regulated by the Fair Labor Standards Act.

For these reasons we find that petitioners' employees come within the coverage of the Fair Labor Standards Act of 1938 and not within the exemptions stated in either § 13 (a) (2) or § 13 (b) (1) of that Act, and the judgment of the Circuit Court of Appeals, therefore, is

*Affirmed.*

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.

MR. JUSTICE DOUGLAS, dissenting.

I agree that these employees would be covered by the Fair Labor Standards Act but for the exemption contained in § 13 (b) (1). That subsection exempts from § 7 of the Act "any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act, 1935 . . ."

There is no doubt that the Interstate Commerce Commission has the power to establish qualifications and maximum hours for employees of a carrier who are mechanics engaged in greasing, repairing, servicing, and maintaining its transportation equipment. *In the Matter of Maximum Hours of Service of Motor Carrier Employees,* 28 M. C. C. 125. I think that power would still exist if the carrier separately incorporated its garage. This affiliated garage is not like an independent commercial garage. It is still a part of the carrier's business—no more separate or distinct than any other department. The same people own it, operate it, and manage it. If the Interstate Commerce Commission, acting under § 204 of the Motor Carrier Act of 1935, had undertaken to establish the quali-

fications and maximum hours for these mechanics, I cannot believe that we would allow its jurisdiction to be defeated by that device, whatever may have been the reason for the separate incorporation of the garage. For these mechanics were, in the practical sense, employees of the carrier after, as well as before, incorporation. And the exemption contained in § 13 (b) (1) of the Fair Labor Standards Act is dependent, not on the exercise by the Interstate Commerce Commission of its power, but on the existence of that power.[1] The power which Congress granted the Interstate Commerce Commission to establish qualifications and maximum hours for mechanics should not be allowed to be defeated by arrangements between parties which, for certain purposes, may estop them from asserting that two corporations in form are one in substance.

This particular exemption may not be a wise one. But we must take the law as it is written. The policy behind the exemption is defeated, if mere legal forms are allowed to nullify the power of the Interstate Commerce Commission to deal with the problem of safety. As the Commission said, ". . . the carefully supervised work of skilled mechanics is a most important factor in the prevention of accidents, and therefore in the promotion of highway safety." *In the Matter of Maximum Hours of Service of Motor Carrier Employees, supra,* p. 133. We should refuse to whittle down that jurisdiction, even though we thought that the public interest would be better served by broadening the coverage of the Fair Labor Standards Act.

MR. JUSTICE FRANKFURTER and MR. JUSTICE RUTLEDGE join in this dissent.

---

[1] To date the Commission has prescribed qualifications and maximum hours only for drivers. See 49 Code Fed. Reg., Cum. Supp. (1944) Parts 191, 192.