**DIAL et al. v. HI LEWIS OIL CO.**

No. 5891.

United States District Court
W. D. Missouri, W. D.

July 5, 1951.

William D. Cosgrove, Kansas City, Mo., for plaintiffs.

Terrell & Taylor, Kansas City, Mo., for defendant.

REEVES, Chief Judge.

These are actions to recover for overtime under the Fair Labor Standards Act. The suit was brought pursuant to the provisions of Section 216, Title 29 U.S.C.A. It is claimed by each of the plaintiffs that he was employed by the defendant, who "operated a motor fuel service station at Highway 40 and Pitman Road, Jackson County, Missouri." It is further alleged that "said station was engaged in the distribution and sale of motor fuel to freight carriers engaged in interstate commerce." Based upon these averments, they claimed overtime according to the standards of employment fixed by the labor act, and each of the plaintiffs seeks a recovery for such overtime as provided by said Act.

The defendant admits the employment but describes his business as operating "a filling station located at Highway 40 and Pitman Road, Jackson County, Missouri." Defendant not only denies that the several plaintiffs were engaged in interstate commerce or the production of goods for interstate commerce but specifically avers that it was exempt from the provisions of said Act, perforce Section 213(a) (1) Title 29 U.S.C.A. The defendant also pleads exemption from the provision of the law by reason of paragraph (2) of said section 213(a) Title 29. Identical defenses are made to each count of the complaint. This was so for the reason that the several plaintiffs interposed their claims by as many different counts.

The evidence was without dispute that in operating its filling station at the point named in the pleadings the defendant sold large quantities of gasoline by the usual filling station method to various consumers, including trucks engaged in interstate commerce. Such motor fuel was not loaded and hauled away for resale but was placed in the fuel tanks and was sold to the operator of each truck or to the owner thereof, which became and was an ultimate con-

sumer. The gasoline was placed in the tanks and used for power purposes in the operation of the trucks in the usual way. Some of the patrons who were engaged in interstate traffic or commerce received discounts because of their large purchases and thereby obtained their gasoline at a somewhat lower retail price than those who purchased smaller quantities.

It is the contention of the plaintiffs that their employer was engaged in interstate commerce within the purview of the Fair Labor Standards Act and that because of that fact they are entitled to overtime as contemplated by said Act, and suit was brought pursuant to the provisions of Section 216 Title 29 U.S.C.A.

1. Adverting to Section 213 of said Title 29 U.S.C.A., it is to be noted that said section is entitled "Exemptions" and applicable provisions are, "(a) The provisions of sections 206 and 207 of this title shall not apply with respect to (1) any employee employed in a bona fide * * * local retailing capacity * * *; or (2) any employee engaged in any retail or service establishment * * *."

It should be noted that notwithstanding the averments of the complaint defendant is not operating a service establishment. It operates purely and exclusively a filling station, and, as stated, in its operation it dispenses large quantities of gasoline for motor fuel purposes only, to a large number of important customers who take large quantities of its gasoline.

The Supreme Court in Roland Electric Co. v. Walling, 326 U.S. 657, loc. cit. 666, 66 S.Ct. 413, 417, 90 L.Ed. 383, gave a logical interpretation of the statute when it said: "However, if read in connection with the declared purpose of the Act and in the light of its legislative history and administrative interpretation *the clause does not reach employees 'engaged * * * in the production of goods for commerce' as were those in this case.* When so read, the exemption reaches employees of only such retail or service establishments as are comparable to the local merchant, corner grocer *or filling station operator who sells to or serves ultimate consumers* who are at the end of, or beyond, that 'flow of goods in commerce' which it is the purpose of the Act to reach." (Emphasis mine.)

Undeniably, the patrons of the defendant were ultimate consumers or users. See 9 Words and Phrases, Pocket Parts.

It makes no difference how large the quantity of gasoline that may be sold to a patron, he is the ultimate consumer because he is the ultimate user. The gasoline was not sold in commerce for the reason that commerce is transportation of commodities and consists of a dealing in commercial products, involving the purchase, sale or exchange of merchandise, and goods for commerce or those things which are communicated, transmitted or transported as a business for pay or profit and as concomitants of business transactions. Young v. Kellex Corporation, D.C., 82 F.Supp. 953, loc. cit. 958–960. Or, as said in Syllabus 7 of the same opinion: "'Commerce' within Fair Labor Standards Act is passing of merchandise from one state to another, from one person to another, to be sold in competition with other goods in ordinary channels of trade."

It will be noted from this reasoning that the defendant, in selling motor fuel, was in no way engaged in interstate commerce, as it was selling to the ultimate consumer. The statute refers to a retailer as being within the exemption and retail sales have been repeatedly defined as sales made to the ultimate consumer or user and that such sales are made to consumers rather than to dealers for merchandise for resale.

In Northwestern-Hanna Fuel Co. v. McComb, 8 Cir., 166 F.2d 932, loc. cit. 936, the Court of Appeals, 8th Circuit, quoted approvingly from an interpretative bulletin, as follows: "Sales to business or commercial users will also be considered retail if made in approximately the same quantity or at approximately the same price as that charged the ordinary home consumer." That was precisely the situation in this case.

It is unnecessary to cite authorities in support of the well understood meaning of retail sales.

The Supreme Court, previously, in A. H. Phillips, Inc., v. Walling, 324 U.S. 490, loc. cit. 497, 65 S.Ct. 807, 810, 89 L.Ed. 1095, commented: "Congress was interested in exempting those regularly engaged in local retailing activities and those employed by small local retail establishments, epitomized by the corner grocery, the drug store and the department store. It felt that retail concerns of this nature do not sufficiently influence the stream of interstate commerce to warrant imposing the wage and hour requirements on them."

The evidence did not disclose a single case of an interstate sale.

2. The cases cited by the learned and industrious counsel for plaintiffs are not applicable to a situation such as presented here. Each of the cases cited is on a par with the case of Martino v. Mich. Window Cleaning Co., 327 U.S. 173, 66 S.Ct. 379, 381, 90 L.Ed. 603, where the court held that the window cleaners were "engaged almost exclusively in servicing customers for whom such services were necessary in their production of goods for interstate commerce." In the instant case the defendant was engaged in local intrastate trade. He was retailing to ultimate consumers who, in some instances, were engaged in interstate commerce.

Another case illustrative of the point made by counsel for plaintiff is Boutell v. Walling, 327 U.S. 463, 66 S.Ct. 631, 90 L.Ed. 786. In that case the employees of the service company were engaged in repairing and maintaining vehicles of a single interstate motor carrier, and the court held that they came within the benefits of the Fair Labor Standards Act. Note this language, 327 U.S. loc. cit. 465, 66 S.Ct. loc. cit. 632: "The employees of the Service Company involved in this suit are mechanics engaged in greasing, repairing, servicing and maintaining the transportation equipment owned and operated by the Drive-Away Company."

And, then, 327 U.S. loc. cit. 467, 66 S.Ct. loc. cit. 633: "Accordingly, the employees of the Service Company are not engaged in a retail or service establishment within the meaning of § 13(a) (2) [29 U.S.C.A. § 213 (a) (2)] as interpreted in Roland Electrical Co. v. Walling, 326 U.S. 657, 66 S.Ct. 413, [90 L.Ed. 383], and Martino v. Michigan Window Cleaning Co[mpany], 327 U.S. 173, 66 S.Ct. 379, [90 L.Ed. 603].

And, just before it employed this language, the court had said: "The Drive-Away Company does not use their services for its own purposes *as an ultimate consumer, beyond the end of the flow of goods in interstate commerce.*" (Emphasis mine.)

Quite clearly the motor fuel sold by the defendant is not in the flow of goods in interstate commerce.

3. It would be as reasonable to say that the restaurateur who provided the breakfast or other repasts for the drivers of the interstate carriers was engaged in interstate commerce as to say that the filling station operator who provided fuel for the motor car was engaged in interstate commerce. The drivers of the motor vehicles had to be fed just as the trucks had to be refueled, and the restaurateur would be just as much engaged in interstate commerce as would be the filling station operator.

The late Judge Otis, in United States v. Sutherland, D.C., 9 F.Supp. 204, 207, in an able and exhaustive opinion said in substance that the local seller in a retail establishment was doing business intrastate and that the seller was not concerned with what the purchaser does with the thing bought. Judge Otis followed his illustration with this language: "It is impossible to elaborate a truth so simple."

It would follow from the foregoing that the defendant is not engaged in interstate commerce or the production of goods for interstate commerce, nor is it engaged in servicing goods in transit. It is merely engaged in selling to an ultimate consumer and therefore under standard definitions is a retailer and clearly within the exemption provided by said section 213. Judgment should be for the defendant.