W. Willard WIRTZ, Secretary of Labor,
United States Department of Labor,
Appellee,

v.

HIGHWAY TRANSPORTATION, INC.,
Appellant.

No. 8616.

United States Court of Appeals
Fourth Circuit.

Argued June 13, 1962.

Decided Nov. 7, 1962.

Ernest W. Machen, Jr., Charlotte, N. C. (Blakeney, Alexander & Machen, Charlotte, N. C., on brief), for appellant.

Jacob I. Karro, Acting Asst. Sol., United States Department of Labor (Charles Donahue, Sol. of Labor, Caruthers G. Berger, Attorney, and Beverley R. Worrell, Regional Attorney, United States Department of Labor, on brief), for appellee.

Before SOPER, HAYNSWORTH and BRYAN, Circuit Judges.

HAYNSWORTH, Circuit Judge.

The Secretary of Labor brought this action to recover, for the benefit of eight truck drivers, additional compensation for hours worked by the truck drivers in excess of forty hours per week. The employer defends upon the ground that its operations are subject to regulation by the Interstate Commerce Commission under the Motor Carrier Act and the services of its truck drivers are, therefore, exempt from § 7 of the Fair Labor Standards Act by virtue of § 13(b) (1) [1] of that Act. Alternatively, it suggests that the applicability of the overtime compensation provisions of the Fair Labor Standards Act to the work of these employees has not been settled finally by the courts within the meaning of § 16(c) [2] of that Act.

We think the application of the overtime compensation requirements of the Fair Labor Standards Act to the work of these eight truck drivers is an issue which has not been settled finally by the courts and we are, therefore, without jurisdiction of this action brought by the Secretary of Labor to enforce payment of additional compensation for labor previously performed.

Highway Transportation, Inc., operates a fleet of trucks in interstate commerce

---

1. 29 U.S.C.A. § 213(b) (1).

2. 29 U.S.C.A. § 216(c).

over fixed routes and on regular schedules under contracts with the United States Post Office Department. Some of these vehicles are large tractor-trailer combination units, while others are large van type vehicles having the general dimensions of buses. The routes involved are from points in North Carolina to various points in North Carolina, South Carolina and Virginia.

As is customary in the transportation industry, Highway Transportation, Inc. has compensated its truck drivers upon a mileage basis. This compensation was at rates which netted the truck drivers sums which, converted to an hourly basis, exceed the hourly minimum rates prescribed by § 6 of the Fair Labor Standards Act. The eight employees for whose benefit this action was brought, however, in many weeks worked more than forty hours, but not in excess of the maximum number of hours specified in regulations of the Interstate Commerce Commission or in the applicable contracts or regulations of the Post Office Department. For hours of work in excess of forty hours per week, they received no additional compensation, all of their compensation having been computed solely upon the mileage basis.

The Fair Labor Standards Act by § 13 (b) (1) exempts from the requirements of § 7, but not from those of § 6, "any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service * * *." The Interstate Commerce Commission has the power to establish qualifications and maximum hours of service for all truck drivers engaged in contract carriage in interstate commerce.[3] If Highway Transportation, Inc. is a contract carrier within the meaning of the Motor Carrier Act, § 7 of the Fair Labor Standards Act has no application to the work of these truck drivers.

The Secretary of Labor concedes that, without question, Highway Transportation's operations are those of a contract carrier subject to regulation by the Interstate Commerce Commission, except for the fact that the contracting authority is the Post Office Department and the cargoes carried consist of mail, parcel post and other matter handled by the Post Office Department. The Secretary does not question the fact that the definition of a contract carrier contained in § 203 (a) (15)[4] of the Motor Carrier Act squarely fits Highway Transportation, Inc. He contends, however, that Congress should not be thought to have intended that carriers selected by the Post Office Department to carry mail would be required to obtain permits from the Interstate Commerce Commission to perform the work which had been entrusted to them by the Post Office Department, or that their compensation, determined by open bidding to the Post Office Department, should be subject to the requirement of the Interstate Commerce Commission that the carriers observe reasonable minimum rates and charges.

Primarily, the Secretary relies upon administrative rulings of the Interstate Commerce Commission and of the Administrator of the Fair Labor Standards Act which uniformly exempt the operation of vehicles employed exclusively in the carriage of mail from the requirements of the Motor Carrier Act and subject them to the provisions of § 7 of the Fair Labor Standards Act, and upon certain cases, presently to be mentioned, which are not inconsistent with the administrative interpretations. .

3. By § 204(a) (2) of the Motor Carrier Act (49 U.S.C.A. § 304(a) (2)), the Commission is authorized, "(2) To regulate contract carriers by motor vehicle as provided in this chapter, and to that end the Commission may establish reasonable requirements with respect to uniform systems of accounts, records, and reports, preservation of records, qualifications and maximum hours of service of employees, and safety of operation and equipment."

The power to regulate the qualifications and maximum hours of service of employees, however, is limited to those employees whose work affects the safety of operations. United States v. American Trucking Associations, Inc., 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345.

4. 49 U.S.C.A. § 303(a) (15).

On the other hand, Highway Transportation contends that no exemption can be or should be read into the Motor Carrier Act when its operations are so plainly those of contract carriage. There is no basis, it says, for holding that Act inapplicable simply because the contracting authority is the Post Office Department rather than the Department of Defense or some other agency of the Government [5] or some private corporation. It suggests there is no less reason for the existence of power in the Interstate Commerce Commission "to establish qualifications and maximum hours of service" for these truck drivers than for drivers of similar equipment operating over the same interstate routes under contracts of carriage when the contracting authority is not the Post Office Department.[6] It relies upon one case, presently to be mentioned, supporting its position.

Similar questions first came before the courts in 1941. In that year, two District Courts in this Circuit almost simultaneously reached opposite conclusions. Judge Barksdale, in the Western District of Virginia, in Magann v. Long's Baggage Transfer Co., 39 F.Supp. 742, held that the carriage of mail under contract with the Post Office Department was contract carriage and that the operations were exempt from the requirements of § 7 of the Fair Labor Standards Act by virtue of § 13(b) (1). Judge Chesnut, in the District of Maryland, on the other hand, in Thompson v. Daugherty, 40 F.Supp. 279, held that the carriage of mail was not exempt from the requirements of § 7 of the Fair Labor Standards Act. He doubted that mail was "property" within the meaning of § 203(a) (15) of the Motor Carrier Act, a doubt for which we find no support and which is not suggested by the Secretary here. However, he found some inappropriateness in a requirement that a carrier, selected by the Post Office Department and whose compensation has been determined by that Department, should be required to apply to the Interstate Commerce Commission for permits and subject itself to regulation of its rates by that Commission.

Judge Chesnut in Thompson was dealing with a local operation in Cumberland, Maryland. Daugherty's contract with the Post Office Department required him to transfer mail between the Post Office in Cumberland and railroad stations in that city. It was not interstate carriage of itself and could be considered so only if viewed as a part of the interstate carriage by the railroads. The unseemliness of the requirement that Daugherty obtain permits from the Interstate Commerce Commission and that the Commission concern itself with his rates sprang as much from the nature of Daugherty's operation as from the fact that the Post Office Department was the contracting authority.[7]

Thompson v. Daugherty has since been followed in several District Court decisions reported only in labor services,[8] and

---

5. Among the exemptions enumerated in § 203(b) of the Act are "motor vehicles operated, under authorization, regulation, and control of the Secretary of the Interior, principally for the purpose of transporting persons in and about the national parks and national monuments." There is no comparable exemption of vehicles operated under the authority of the Postmaster General or of any other federal officer, department or agency.

6. Actually, by regulation, the Post Office Department has made applicable the safety regulations of the Interstate Commerce Commission but compliance with them has not been supervised or enforced by the Interstate Commerce Commission.

7. Daugherty's operations may have been exempt from those requirements of the Act under the provisions of § 203(b) (8).

8. Repsher v. Streepy, E.D.Pa., 7 WH Cases 769, 14 Lab.Cases ¶ 64,364; Mitchell v. Griffin, E.D.Texas, 12 WH Cases 296, 26 Lab.Cases ¶ 68,750; Mitchell v. Raines, E.D.Pa., 12 WH Cases 856, 30 Lab.Cases ¶ 70,015; Mitchell v. Blackburn, D.Md., 14 WH Cases 146, 37 Lab. Cases ¶ 65,399; Mitchell v. Steinmetz, N.D.Ga., 14 WH Cases 202, 37 Lab.Cases ¶ 65,562. These cases were concerned with small, essentially, local operations comparable to those disclosed in Thompson v. Daugherty. In some of them, the exemption of § 13(b) (1) does not appear

in one decision by the Court of Appeals for the Fifth Circuit.[9] The Fifth Circuit, however, was of the opinion that the employer there was not a carrier at all, but was only performing an unregulated service for a carrier, exempt from regulation by the Interstate Commerce Commission under the doctrine of Boutell v. Walling.[10]

Clearly, Highway Transportation is not a service establishment, exempt on that account from regulation by the Interstate Commerce Commission. The Secretary does not contend it is not a carrier; exemption from the Motor Carrier Act is asserted solely on the basis that the carriage is performed under a contract with the Post Office Department.

█ It is thus apparent that the only decided cases holding § 7 of the Fair Labor Standards Act applicable to truck drivers for carriers of mail under contract with the Post Office Department involve small, essentially local operations hardly comparable to the operations of Highway Transportation, Inc., or they applied principles which, admittedly, are inapplicable here. We find no clear holding anywhere that extensive interstate carriage of mail, concededly contract carriage subject to regulation by the Interstate Commerce Commission were the contracting authority anyone other than the Post Office Department, is not contract carriage subject to regulation by the Interstate Commerce Commission solely on account of the fact that the contracting authority is the Post Office Department. Under these circumstances, we must conclude that the issue of law tendered by the Secretary here is not one that has been settled finally by the courts within the meaning of § 16(c) of the Fair Labor Standards Act. Consequently, this Court is without jurisdiction to decide the matter upon the suit of the Secretary under the terms of that Section.

Our own decision in Wright v. Carrigg, 4 Cir., 275 F.2d 448, is inapposite here. We were there concerned with a small, local operation under a contract with the Post Office Department for the transfer of mail to and from a railroad station and a Post Office. The driver of the vehicle was paid less than the minimum wage required by § 6 of the Fair Labor Standards Act and received no additional compensation for hours worked in excess of forty per week. The employee filed the action and claimed liquidated damages, which the employer resisted upon the ground that his failure to comply with the Act had been in a good faith belief that his operation was entirely outside the coverage of the Act. He did not claim, and this Court did not consider, the exemption of § 13(b) (1), and that exemption would have been irrelevant insofar as the employee's action there involved violations of the minimum wage provisions of § 6. We held that it was well settled that the Fair Labor Standards Act does apply to employees engaged in the carriage of mail for an employer who has entered into a contract with the Post Office Department for that carriage. There is no question but that the Fair Labor Standards Act, generally,

---

to have been claimed, and in some of them alleged violations of § 6 as well as of § 7 of the Fair Labor Standards Act were involved. In some of these cases, also, the nature of the duties of the employees involved is not disclosed, and, unless their work affected safety of operations, their maximum hours of service would not be subject to the regulatory power of the Interstate Commerce Commission.

9. Steinmetz v. Mitchell, 5 Cir., 268 F.2d 501.

10. 327 U.S. 463, 66 S.Ct. 631, 90 L.Ed. 786. The court also cited United States v. N. E. Rosenblum Truck Lines, 315 U.S. 50,

62 S.Ct. 445, 86 L.Ed. 671, and Thomson v. United States, 321 U.S. 19, 64 S. Ct. 392, 88 L.Ed. 513. Clearly, however, Congress did not intend to confer "grandfather" rights, to be independently exercised, upon all persons who contributed to the services of a carrier. Those cases holding that the carriage was solely that of the primary carrier, within the meaning of the extension of "grandfather" rights, lend no support to a contention that Highway Transportation, presently extensively engaged in the regular operation of trucks in interstate commerce, is not a carrier. The Secretary makes no such contention.

does apply to such carriage. It is clear that the provisions of § 6 of that Act apply to the operations of Highway Transportation, Inc. The question here, however, is the limited exemption provided by § 13(b) (1) from the requirements of § 7 of that Act, a question with which we were unconcerned in Wright v. Carrigg.

We intimate no opinion upon the merits of the claim. In deciding that the issue is one which has not yet been finally settled by the courts, we do not consider administrative interpretation of the Motor Carrier Act or of the Fair Labor Standards Act, or any other material which would bear upon a proper construction of those statutes. Decision of the tendered question on the merits must wait until the issue arises in a case of which the court has jurisdiction.

The judgment below will be reversed and the case will be remanded, with instructions to dismiss the complaint for want of jurisdiction.

Reversed and remanded.