James D. HODGSON, Secretary of Labor, United States Department of Labor, Plaintiff-Appellee,

v.

ELLIS TRANSPORTATION CO., a corporation, and Wade G. Ellis, Defendants-Appellants.

No. 71–1561.

United States Court of Appeals, Ninth Circuit.

March 15, 1972.

⚷1600

David G. Moore (argued), of Reid, Babbage & Coil, Riverside, Cal., for defendants-appellants.

Carin Ann Clauss (argued), Helen W. Judd, Dept. of Justice, Alfred G. Albert, Acting Solicitor of Labor, Bessie Margolin, Assoc. Solicitor, Washington, D. C., John M. Orban, Assoc. Regional Solicitor, Los Angeles, Cal., for plaintiff-appellee.

Before HAMLEY, HUFSTEDLER and WRIGHT, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

In this action brought under the Fair Labor Standards Act (29 U.S.C. § 201), et seq., the Secretary of Labor alleged the appellant Ellis Transportation Co. was in violation of § 7(a) (1) of the Act by failing to pay overtime to 12 employees. The district court was asked to restrain future violations and to enjoin further withholding of past due wages.

Ellis Transportation contended that its employees were exempted by the so-called Motor Carrier Act exemption, 29 U.S.C. § 213(b). Further, it asserted that George Blackstone, a supervising mechanic, was exempted because he was an independent contractor, not an employee. The district court rejected both contentions and granted the equitable relief sought by the Secretary. We affirm.

### I.

Section 7(a) (1) of the Fair Labor Standards Act requires employers, whose employees meet the jurisdictional requisites, to compensate them at no less than one and one-half times the regular hourly wage for time worked in excess of a 40-hour work week. Section 13(b) of the Act exempts any employee over whom the Interstate Commerce Commission has regulatory power to fix qualifications and maximum hours of service pursuant to Section 204 of the Motor Carrier Act, 49 U.S.C. § 304. The critical question in this case is whether Ellis Transportation falls within the Section 13(b) exemption.

Ellis Transportation leases and maintains rolling stock, its principal customer being Ellis Interstate Corporation, which holds an I.C.C. license for interstate trucking. Ellis Transportation is a California corporation and Wade Ellis is its sole shareholder. Prior to 1962 Ellis Transportation held an I.C.C. interstate trucking license. In 1962 Mr. Ellis formed Ellis Interstate as a wholly owned corporate subsidiary of Ellis Transportation, and transferred the I.C.C. license to the new corporate entity. The parties to this suit have stipulated that Ellis divided his business in this manner to simplify his compliance with the record keeping and reporting requirements of the Interstate Commerce

Commission and the California Public Utilities Commission.

The two companies share one physical facility in Indio, California. They share one telephone number, and the trucking industry customarily refers to the whole operation as Ellis Transportation. In a real economic sense, these two companies are integrated into one business.

Appellants contend that the court, by looking to substance instead of corporate form, should hold that Mr. Ellis' entire trucking business falls within the Motor Carrier Act exemption.

The argument is plausible, but we cannot accept it. The Supreme Court decisively rejected this approach to the § 13(b) exemption in Boutell v. Walling, 327 U.S. 463, 66 S.Ct. 631, 90 L.Ed. 786 (1946). In *Boutell* a partnership, the F. J. Boutell Service Company, leased vehicles exclusively to a transportation company, F. J. Boutell Drive-Away Company, a corporation wholly owned by the partners in the Service Company. The Court held that the two companies were legally independent, so the partnership's employees did not come within the Motor Carrier Act exclusion. Three Justices dissented on the ground that, despite the legal forms chosen, the two companies in reality constituted a single business.

■ No meaningful difference distinguishes Ellis' situation from that presented in *Boutell*, as appellants' counsel virtually conceded at oral argument. We hold that the employees of Ellis Transportation Company are not employees of a common carrier by motor vehicle.

The *Boutell* emphasis on legal form may initially seem senseless, yet it serves a worthwhile purpose. The Court's opinion indicates that the Interstate Commerce Commission had disclaimed jurisdiction over employees of vehicle leasing companies, apparently without regard to their actual integration with transportation companies.

*Boutell, supra,* at 470, 66 S.Ct. 631. So far as we can determine, the Interstate Commerce Commission still declines to regulate employees of leasing companies that are legally independent of transportation firms. *See* Wirtz v. Dependable Trucking Co., 260 F.Supp. 240 (D.N.J. 1966).

Exempting the Ellis Transportation Company employees from the coverage of the Fair Labor Standards Act would likely leave them in a regulatory limbo. The Secretary of Labor would have no power to govern their working conditions, and the I.C.C. would not reach them as a matter of administrative practice. Even if the latter should in the future assume regulatory jurisdiction, it could not restore the lost overtime pay to these employees.

II.

Ellis argues that the trial court erred in holding that an employer-employee relationship existed between Ellis Transportation and George Blackstone, a diesel mechanic who supervised the other Ellis mechanics. Some aspects of Blackstone's work for Ellis tend to indicate that he might be an independent contractor. For example, he paid his own insurance, taxes, and social security; he did not receive medical coverage, vacation benefits, or paid holidays; he kept time statements and submitted weekly invoices to Ellis.

Other facts make Blackstone look like an Ellis employee. He worked exclusively for Ellis Transportation Company; he had no independent business organization or business license, though he had earlier held a license while working for himself; he depended wholly on Ellis for his livelihood; he supervised the other Ellis mechanics, and was obliged to maintain regular hours even though he did not punch the company time clock.

Appellant's independent contractor argument draws upon California common law. This approach ignores the Fair

Labor Standards Act's own definition of the employer-employee relationship.[1]

"This Act contains its own definitions, comprehensive enough to require its application to many persons and working relationships which, prior to this Act, were not deemed to fall within an employer-employee category." Walling v. Portland Terminal Co., 330 U.S. 148, 150–151, 67 S.Ct. 639, 640, 91 L.Ed. 809 (1947).

Rutherford Food Corporation v. McComb, 331 U.S. 722, 67 S.Ct. 1473, 91 L. Ed. 1772 (1947), is the leading decision in this area. The district court had applied common law principles in holding that a crew of boners in a meat packing plant were independent contractors. The Court of Appeals for the 10th Circuit and the Supreme Court took a different tack, holding that coverage would be governed by underlying economic realities instead of traditional rules borrowed from tort theory.[2] The Supreme Court said that the courts must examine the circumstances of the whole activity, and "[w]here the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of the Act." 331 U.S. at 729, 67 S.Ct. at 1476.

■ Applying these principles, we have no difficulty in deciding that the district court correctly classified Blackstone as an Ellis Transportation employee. We cannot realistically say that Blackstone is in business for himself, since he works exclusively for Ellis as an essential, integral part of its everyday operation.

### III.

■ Ellis half-heartedly contends that injunctive relief is inappropriate because (1) Ellis is presently in compliance with § 7(a) (1) since a collective bargaining agreement now requires it to pay overtime, and (2) the Secretary delayed bringing action for more than a year after discovering the violations. We observe that the collective bargaining agreement does not cover four of the 12 employees involved in this suit. Further, without the injunction these employees would have no legal remedy to collect the past due overtime we hold is owed them. *See* Wirtz v. Malthor, Inc., 391 F.2d 1 (9th Cir. 1968). The injunction should issue. *See* Wirtz v. Milton J. Wershow Co., 416 F.2d 1071 (9th Cir. 1969); Wirtz v. Malthor, Inc., supra.

We affirm the judgment of the district court.

1. 29 U.S.C. § 203 says:
"As used in this chapter—

. . . . .

(d) 'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee . . . .
(e) 'Employee' includes any individual employed by an employer.

. . . . .

(g) 'Employ' includes to suffer or permit to work."
Mr. Justice (then Senator) Black described this as, "the broadest definition that has ever been included in any one Act." 81 Cong.Rec. 7657, 75th Cong., 1st Sess. (1937).

2. The Court of Appeals said:
"[I]n doubtful situations, coverage is to be determined broadly by reference to the underlying economic realities rather than by traditional rules governing legal classifications of master and servant on one hand, and employer and independent contractor on the other. . . . [T]he Act concerns itself with the correction of economic evils through remedies which were unknown at common law, and if it expressly or by fair implication brings within its ambit workers in the status of these . . . it is immaterial whether under the principles of the common law the relationship between [the Company] and the [workers] has been that of employer and independent contractor for other purposes." Walling v. Rutherford Food Corporation, 156 F. 2d 513, 516 (10th Cir. 1946), aff'd, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947).