**Ann McLAUGHLIN, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**Steven DILL, and Sharon Dill, Individually and as partners doing business as Stanley Steemer; and S & S Enterprises, a corporation, Defendants.**

**Civ. No. L 86–137.**

United States District Court,
N.D. Indiana,
Hammond Division,
at Lafayette.

June 10, 1988.

Leonard A. Grossman, U.S. Dept. of Labor, Chicago, Ill., for plaintiff.

James R. Beaver, Rensselaer, Ind., Richard E. Parker, Indianapolis, Ind., Robert F. Weaver, Jr., Columbus, Ohio, for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

The complaint in the above case was filed on December 8, 1986 by the then Secretary of Labor. It is being prosecuted by the present Secretary of Labor. The complaint purports to be based on provisions of the Fair Labor Standards Act of 1938 (29 U.S. C. § 201 *et seq.*), as amended (hereafter "FLSA"). The complaint seeks to enjoin the defendants from withholding any unpaid compensation found to be due to the defendants' employees under FLSA and also seeks liquidated damages. The defendants allege that they are "an enterprise which is comprised exclusively of one or more retail or service establishments, as defined in § 13(a)(2) of FLSA, and within the meaning of § 3(s)(3) and § 7(i) thereof." The Secretary contests the availability of the afore-said sections as defenses and asserts that establishments engaged in in-home cleaning of carpets and upholstery lack a "retail concept" within the meaning of the Act. A motion for partial summary judgment was filed by the Secretary on March 3, 1988, and has been fully briefed. The matter is ripe for ruling.

The defendants argue that plaintiff has, in effect, asked this court for an advisory opinion as to whether any employer engaged in "cleaning fabrics" may ever be adjudged to be operating a "retail or service establishment" under the FLSA. Defendants claim that partial summary judgment is improper and that this court should instead inquire into whether defendants' Third Defense set forth in its Answer, should be stricken under Rule 12(f), Fed.R. Civ.P. Defendants' technical objection, however, results in an analysis of the very same issue: are defendants exempted as a retail and service establishment from overtime and recordkeeping provisions of the FLSA? Plaintiff points out in her Reply

Brief that her motion is clearly dispositive of a major issue in the litigation and cannot be considered merely a request for an advisory opinion. This court agrees with the Secretary that under *Walton v. United Consumers Club, Inc.*[1] and in light of the position taken by Wright, Miller and Kane in *Federal Practice and Procedure*[2], partial summary judgment is proper.

The motion for summary judgment is limited to a single, legal question, namely: are the employees of the defendants, employees of a "retail or service establishment" within the meaning of the Act? This motion will not resolve all of the issues in the case, and the ruling on the same will not be a final appealable judgment. The jurisdiction of this court is conferred by Section 16(c) and 17 of FLSA, and 28 U.S.C. § 1345. Defendants Steven and Sharon Dill (hereafter the "Dills") were, prior to November 1, 1985, engaged individually and as partners under the name "Stanley Steemer," in the operation of a carpet and furniture cleaning business and its related activities, with its place of business at 404 S. College Avenue, Rensselaer, Jasper County, Indiana. S & S Enterprises, Inc. is an Indiana corporation which, after October 31, 1985, engaged in the operation of a carpet and furniture cleaning business in the performance of related activities, with an office and place of business presently located at 423 S. College Avenue, in Rensselaer, Indiana. The Dills are and have been the officers and owners of S & S Enterprises (hereafter "S & S") since October 31, 1985, and act for and on behalf of that corporate entity in relation to its employees. It is not factually disputed that the defendants are and have been engaged in related activities performed through unified operation or common control for a common business purpose and, therefore, are an enterprise within the meaning of

---

1. 786 F.2d 303 (7th Cir.1986). This case originally emanated from this Judge and court and will be of considerable relevance when this court reaches the issue of wilfulness on the merits. The Seventh Circuit ruled that Section 7(i) is not merely an affirmative defense.

2. "A partial summary judgment thus seems particularly appropriate [with regard to defensive matters]. This is true even though Rule 56(d) refers only to the motion directed toward 'all or any part' of 'a claim.' The fact that the order is directed at defensive matter should not prevent it from being issued...." 10 A Wright, Miller & Kane, *Federal Practice and Procedure*, § 2737.

Section 3(r) of the FLSA. During the calendar years 1985 through 1987, defendants had an annual gross volume of sales that exceeded $362,500.00. But the defendants' annual gross volume of sales in 1984 did not exceed $362,500.00. The basic method of operation of the defendants' business is that carpeting and furniture are cleaned in customer homes or businesses by a crew chief and one or more assistants. The crew chief and helper stock a truck in the morning and at the end of the day clean it out. The crew chief and his helper are responsible for all pre-spotting, moving of furniture and cleaning of carpet and furniture on the customer's premises. The crew chief and his assistant solicit sales or additional services and products on sight, but the order for the basic cleaning job is placed in advance and crews do not appear at customer sites unless an order has been placed in advance for carpet cleaning services. Sometimes pre-spotting with solvents and other individualized cleaning techniques are used. The primary method of cleaning carpets is that of injecting high pressure steam and hot water into a carpet, simultaneously applying a powerful vacuum to remove the moisture and soil. The power for this process is provided by the van or truck.

Given the current jurisprudence under the commerce clause of the Constitution of the United States, there can be no doubt that the defendants are handling, selling, or otherwise working on goods or materials that have moved in or have been produced for interstate commerce.

More than 25% of the defendants' annual dollar volume sales of goods and services is derived from cleaning fabrics such as carpets or upholstery. The relevant sections of the statute are section 3(s)(3), which provides:

(s) "Enterprise engaged in commerce or in the production of goods for commerce" means an enterprise which has employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and which—

(3) is engaged in laundering, cleaning, or repairing clothing or fabrics;

Also involved is section 13(a)(2), which provides:

Sec. 13. (a) The provisions of sections 6 (except section 6(d) in the case of paragraph (1) of this subsection) and 7 shall not apply with respect to—

\*    \*    \*    \*    \*    \*

(2) any employee employed by any retail or service' establishment (except an establishment or employee engaged in laundering, cleaning, or repairing clothing or fabrics or an establishment engaged in the operation of a hospital, institution, or school described in section 3(s)(5)), if more than 50 per centum of such establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located, and such establishment is not in an enterprise described in section 3(s). A "retail or service establishment" shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry ...

Reference is also made to Section 7(i), which provides:

No employer shall be deemed to have violated subsection (a) by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one half times the minimum hourly rate applicable to him under section 6, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

The question here is whether the defendants' employees are "employees of a retail or service establishment" within the meaning of the FLSA. That definition is discussed in detail in 29 C.F.R. Part 779 Subpart D, and an interpretive bulletin found at 29 C.F.R. sections 779.312 *et seq.* The pertinent part of the interpretive bulletin states:

> (I)t is clear from the legislative history of the 1961 amendments to the Act that no different meaning was intended by the term "retail or service establishment" from that already established by the Act's definition, *wherever used in the new provisions, whether relating to coverage or to exemption* (see S.Rept. 145, 87th Cong., first session p. 27; H.R. 75, 87th Cong., first session p. 9). The legislative pronouncements regarding the 1949 amendments and existing judicial pronouncements regarding section 13(a)(2) of the Act, therefore, will offer guidance to the application of this definition (emphasis added) (29 C.F.R. section 779.312).

The "retail concept" is discussed at 29 C.F.R. 779.316, as follows:

> The term "retail" is alien to some businesses or operations. For example, transactions of an insurance company are not ordinarily thought of as retail transactions.... *Judicial authority is quite clear that there are certain goods and services which can never be sold at retail* (Emphasis added).

There is and can be no serious argument that the defendants' employees have been and are engaged in commerce within the meaning of FLSA. Their firm is primarily engaged in the cleaning of fabrics. Thus, the defendants are within the terms of 3(s)(3) of FLSA, and are a covered enterprise within the meaning of FLSA.

Section 3(s)(3) is unlike Section 3(s)(1), or Section 3(s)(2), which both require the existence of a minimum annual gross volume of sales made or business done. Section 3(s)(3) contains no such minimum. As a result of the applicability of 3(s)(3), the defendants are an "enterprise," and cannot avail themselves of the exemption provided in Section 13(a)(2) because Section 13(a)(2) expressly excludes an establishment that is an enterprise described in section 3(s). In addition, section 13(a)(2) expressly excludes establishments engaged in cleaning fabrics from its protection, thus directly excluding the defendants. It should be mentioned that the dispute as to enterprise coverage and the applicability of Section 13(a)(2), applies only to the Secretary's assertion of coverage for calendar year 1984, since the defendants admit an annual gross volume of sales in excess of $362,500.00, for subsequent years and are therefore, a covered enterprise either under Section 3(s)(1), or under Section 3(s)(2).

The legislative history of the FLSA manifests a congressional intent that the provisions of the same are limited to retail or service establishments and have no application to establishments engaged in the cleaning of fabrics. Prior to the 1949 amendments to FLSA, the exemption set forth in Section 13(a)(2) was interpreted to include laundry and cleaning establishments, although the laundry industry was not specifically mentioned. The 1949 amendments specifically excepted the laundry establishments from the general retail and service establishment exemption, making the exemption contained in Section 13(a)(2) applicable only to establishments where sales for goods or services are "recognizable as retail ... in the particular industry." It appears to be the congressional view that "there is no clear concept in the laundry and cleaning industry of retail services." Congress felt that a separate exemption should be provided. See the explanation of Senator Holland of Florida, 95 Cong.Rec. 12,491, and 12,503 (1949). Such an exemption was therefore created as Section 13(a)(3) of FLSA, and provided a complete exemption from both the minimum wage and overtime pay provisions for the laundry and dry-cleaning industry. The exemption was exclusive in that the laundry industry could only claim the special exemption provided in Section 13(a)(3), and could not claim the general retail and service establishment exemption under Section 13(a)(2).

In 1966, Congress took another look, repealed the former Section 13(a)(3) exemption for laundries, and extended coverage to that industry on an enterprise basis in Section 3(s)(3). By inserting the new exclusionary language in Section 13(a)(2) at that time, Congress manifested its intent to insure that the laundry industry would not claim the retail or service exemption. Congress in effect ratified its earlier position that there is no clear concept of retailing in the laundry industry. The conclusion thus follows that the provisions applicable to retail and service establishments are not applicable to laundry and dry-cleaning establishments.

The opinions of the Administrator of the Wage and Hour Divisions of the Department of Labor are not binding upon a court, but do constitute a body of experience and informed judgment, and are entitled to great weight. The Supreme Court so ruled in *Boutell v. Walling*, 327 U.S. 463, 66 S.Ct. 631, 90 L.Ed. 786 (1946). The Administrator of the Wage and Hour Division has frequently reiterated the opinion that carpet and furniture upholstery cleaning are included in the phrase "an establishment or employees engaged in laundering, cleaning, or repairing clothing or fabrics."

There is additional support in the legislative industry that the provisions of FLSA exempting retail and service establishments from certain of the requirements of FLSA, were not intended to apply to the laundry industry. After the 1966 amendment, there were extensive efforts on the part of the laundry industry to persuade the Administrator of the Wage and Hour Division, as well as Congress, to reconsider the position that laundry or dry-cleaning plants were not considered retail or service establishments, and thus not entitled to exemptions in FLSA relating to such establishments. In 1973, Congress considered amending FLSA and the United States House of Representatives passed a version of the 1973 amendments, which included a provision that for purpose of administering Section 7(i), Section 13(a)(1) "establishments engaged in laundering, cleaning or repairing clothing or fabrics shall be con-

sidered service establishments." *See* Section 207 of H.R. 7935. A Senate version of the bill, S. 1861, contained no similar provision, and the House of Representatives acceded to the Senate's position in conference. *See* H.R.Rep. No. 413, 93rd Cong., 2d Sess. 31 (1973). This legislative history demonstrates that Congress intended to continue to treat the laundry and dry-cleaning industry as ineligible to apply provisions of FLSA relating to retail and service establishments. The 1973 amendments were vetoed by the then President of the United States.

The negative implication of this bit of legislative history is the manifestation of congressional intent that laundry industry employees should receive both minimum wage and overtime compensation. Other similar efforts have been tried and have failed. Section 7(i) is inapplicable to the laundry industry because that industry does not have the requisite "retail concept."

As a matter of statutory interpretation, rug and carpet cleaning are encompassed within the statutory language here involved. The statute is written large enough to encompass rug cleaning under the term "cleaning fabrics." It is clear that when Congress was considering the statute and amendments, it had in mind inclusion of the entire laundry industry as it existed at that time. Section 4(d) of FLSA directs the Secretary of Labor to submit in January of each year information, dates and a report to Congress, including recommendation for further legislation in connection with matters covered by FLSA. In January, 1964, the Labor Department submitted a report on laundry and cleaning service to the Congress in conformance with a congressional request that a study be made of the problems involved in applying the minimum wage to laundry workers. The purpose of the report was to provide current data for evaluating the various legislative proposals to extend FLSA coverage to employees of the laundry and cleaning industry. The survey covered all types of laundry and cleaning services, including family and commercial

power laundries, linen supply and industrial laundries, diaper service, self-service laundries, hand laundries, cleaning and dyeing plant, and rug cleaning and repairing plants. See U.S. Department of Labor, Wage and Hour Public Contracts Division, Report to Congress, *Laundry and Cleaning Services,* January, 1964. These are industries 7211 through 7217, as defined by the Bureau of the Budget in the 1957 Edition of the Standard Industrial Classification Manual. Congress had this information before it at the time it was considering various amendments to this Act. The report made it clear that the laundry industry encompassed all industries within the standard industrial classification group number 7211. The classification of carpet and upholstery cleaning, 7217, includes "establishments primarily engaged in cleaning carpets and upholstery and furniture at a plant or on the customer's premises." The legislative history demonstrates that what Congress intended to accomplish was a sweeping coverage of the entire laundry industry. See *National Automatic Laundry Council v. Shultz,* 443 F.2d 689, 705 (D.C.Cir.1971). At the time it adopted the language covering the entire laundry industry, Congress had before it information establishing that the industry included off-premises as well as on-premises rug cleaning, and it shows language broad enough to include the existing in-home rug cleaning industry.

Although this court does not bottom its decision solely on the construction of a statute by those charged with its administration, such is certainly entitled deference, especially where it has occurred over a long period of time. The Supreme Court said no less in *United States v. Clark,* 454 U.S. 555, 102 S.Ct. 805, 70 L.Ed.2d 768 (1982). Certainly, as a general matter, the Fair Labor Standards Act, which has now been on the federal legislative books for fifty years, is entitled to a reasonably liberal interpretation consistent with its overall plan, scheme and intent. See *Overnight Motor Company v. Missel,* 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942). However, some courts have taken the view that exemptions should be narrowly construed against the employer asserting them. See *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960); and *Donovan v. Brown Equipment and Service Tools, Inc.,* 666 F.2d 148 (5th Cir.1982).

Defendants challenge the Secretary's interpretation of § 13(a)(2), claiming that the parenthetical phrase, "(except an establishment or employer engaged in laundering, cleaning or repairing clothing or fabrics ...)", refers to "retail or service establishment," limits the adjective "any," and constitutes an acknowledgment that the aforementioned laundering operations may very well exist at the "retail or service" level. In other words, defendants claim that laundering operations are not *all* excepted from the exemption without the possibility of some exception to the exception.[3] This court strongly disagrees with defendants' interpretation. The legislative history combined with the plain meaning of the words clearly excepts *all* laundering and cleaning establishments from the exemption.

Defendants next contend that they are not "an establishment ... engaged in laundering, cleaning, or repairing ... fabrics." They claim that their steaming method of removing dirt is not "cleaning" nor is carpet "fabric" under the statute. These contentions are nothing short of ridiculous. For years, operations such as defendants' have been treated as laundering establishments under the FLSA as described previously. There is no question that defendants' service "cleans" carpets by removing the dirt from them. The *American College Dictionary* (1970 ed.) defines "carpet" as "a heavy *fabric,* commonly of wool, for covering floors." (emphasis added) This court completely rejects defendants' contentions.

Plaintiff's motion for partial summary judgment is hereby GRANTED on the is-

3. This court is aware of a quibble that appears in the various briefs about whether or not the defendants do or do not seek to avail themselves, of a Section 13(a)(2) exemption. Since the matter is in conflict, this court, for purposes of this memorandum, will assume that the defendants do so attempt to avail themselves.

sue of whether defendants can avail them-selves of defenses provided by the FLSA as herein described, because they are a "retail or service establishment" within the meaning of the FLSA. This court agrees with the Secretary of Labor that defendants cannot assert said defenses because their operations are specifically excepted from the "retail or service establishment" exemption from section 7 requirements. IT IS SO ORDERED.