370 F.2d 376
 J. E. SHEW, Appellant,
v.
The SOUTHLAND CORPORATION (CABELL'S DAIRY DIVISION), Appellee.
The SOUTHLAND CORPORATION (CABELL'S DAIRY DIVISION), Appellant,
v.
J. E. SHEW and William J. Rogers, Appellees.
 No. 23311.
 United States Court of Appeals Fifth Circuit.
 December 28, 1966.
 
 Douglas Riley, Jr., Dallas, Tex., for J. E. Shew.
 John Bacheller, Jr., Charles Kelso, Atlanta, Ga., Howard L. Abramson, Dallas, Tex., for Southland Corp.
 Bessie Margolin, Associate Sol., Robert E. Nagle, Atty., Washington, D. C., for Department of Labor.
 Before BROWN, COLEMAN and AINSWORTH, Circuit Judges.
 AINSWORTH, Circuit Judge.
 
 
 1
 Southland Corporation, plaintiff, filed this suit seeking a declaratory judgment against its employee, J. E. Shew, and William J. Rogers, Regional Director of the Wage and Hour Division of the United States Department of Labor, defendants, contending that it was not liable to its truck driver-employee, Shew, for overtime wages under the Fair Labor Standards Act, Section 7 (29 U.S.C. § 207), because it was exempt from the overtime requirements of the Act under Section 13(b) (1) (29 U.S.C. § 213(b) (1)).[1] This section provides that Section 7 relating to overtime compensation shall not apply to any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service under Section 204 of the Motor Carrier Act (49 U.S.C. § 304(a) (3)). The latter subsection provides that the Interstate Commerce Commission shall prescribe qualifications and maximum hours of service of employees for private carriers of property by motor vehicle in interstate commerce.
 
 
 2
 The trial judge held that Southland was entitled to the 13(b) (1) exemption because Shew's driving was subject to Interstate Commerce Commission regulations as a private carrier truck driver in interstate commerce. Prior to trial, on motion to dismiss, the district judge dismissed the suit as to the defendant Rogers.
 
 
 3
 According to the stipulated facts, Southland owns a plant at Dallas, Texas, where it processes and packages milk for distribution to its various branches in Texas through a system of its own regularly scheduled private transport trucks. It also receives various products at its Dallas plant which it purchases from producers located outside of the State of Texas and which are distributed to plaintiff's branches in the same scheduled transport trucks. These products include butter, oleo and whipping cream which are processed and packaged in Iowa, Illinois and California, respectively, and which, after receipt at the Dallas plant, are transshipped to Southland's branches in Odessa and Midland, Texas, by means of its trucks. Butter is ordered every other day by the branches in anticipation of specific needs of their customers. Orders are consolidated in the Dallas office and an order is then placed with out-of-state producers. There is no alteration or processing of these products at the Dallas plant. Ordering of whipping cream is similarly done. Shew is regularly employed in driving Southland's trucks from Dallas to plaintiff's Odessa, Texas, and Midland, Texas, branches transporting these products. The parties stipulated that transportation of such out-of-state items constituted transportation of goods in interstate commerce within the meaning of the Fair Labor Standards Act, but defendant Shew contends that his duties as a driver do not furnish a jurisdictional basis for regulation of his employment by the Interstate Commerce Commission pursuant to the Motor Carrier Act.
 
 
 4
 There were two questions presented to the district court for decision: first, whether Southland is exempt from the overtime requirements of the Fair Labor Standards Act, Section 7, because of the exemption provisions in Section 13(b) (1); and, two, whether defendant Rogers, who is the Regional Director of the Wage and Hour Division, may be sued individually under the allegations of plaintiff's petition.
 
 
 5
 On our own motion, we requested counsel for Shew, Southland and the Department of Labor to file memoranda covering the following questions:
 
 
 6
 (1) District court's jurisdiction over an Executive Department's official actions under 28 U.S.C.A. § 1391(e) and cf. § 1361; and
 
 
 7
 (2) Whether it is advisable to refer the matter initially to the Interstate Commerce Commission under the doctrine of primary jurisdiction.
 
 
 8
 The general counsel of the Interstate Commerce Commission was invited by us to file a memorandum amicus as to these issues. We made our request because of our awareness of an intramural conflict between the Department of Labor and Interstate Commerce Commission as to jurisdiction over an employee such as Shew, which will ultimately have to be clarified and resolved by Congress itself.[2] Regional Director Rogers had apparently acted under the authority of a Wage and Hour Division interpretative bulletin on this subject,[3] though his position is that his opinion was based on an understanding of the facts which differed from the facts stipulated.[4] Both the Secretary of Labor and the Interstate Commerce Commission (as well as Southland and Shew) have responded to our request and stated that they do not feel the doctrine of primary jurisdiction is involved under these circumstances. We now agree, for we believe the position of the Interstate Commerce Commission as to the principles involved is sufficiently clear[5] and the answer should properly be determined by the judicial process. Pyramid Motor Freight Corporation v. Ispass, 330 U.S. 695, 67 S.Ct. 954, 91 L. Ed. 1184 (1947). Further discussion of the district court's jurisdiction over an Executive Department's official action under 28 U.S.C.A. § 1361 and § 1391(e) is unnecessary in view of our present holding and reliance on our past decisions in such matters.[6]
 
 
 9
 There is no concurrent jurisdiction between the Fair Labor Standards Act and the Motor Carrier Act, Morris v. McComb, 332 U.S. 422, 68 S.Ct. 131, 92 L.Ed. 44 (1947). Thus if Shew is a motor carrier employee under the jurisdiction of the Interstate Commerce Commission he is excluded from the benefits of the overtime provisions of the Fair Labor Standards Act. Levinson v. Spector Motor Service, 330 U.S. 649, 67 S.Ct. 931, 91 L.Ed. 1158 (1947). Since the Interstate Commerce Commission has asserted jurisdiction and prescribed regulations relative to qualifications and maximum hours of service for truck drivers employed by private carriers engaged in interstate commerce (see Motor Carrier Safety Regulations-Private Carriers, 23 M.C.C. 1 (1940)), the remaining question is whether Shew's duties were those of a truck driver engaged in the transportation of commodities in interstate commerce under the Motor Carrier Act. We believe the facts establish a substantial movement of commodities in interstate commerce, which originate outside of the state, are transported to Dallas and then distributed by Southland's trucks, sometimes the same day or the next day, to points in Texas, pursuant to pre-existing orders from Southland's branches. Though the transportation by Southland from Dallas to points in Texas is between points in the same state, these shipments originate out of the state and are part of a continuous movement in interstate commerce. See United States v. Western Pacific Railroad Co., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). In the memorandum which the Solicitor of Labor filed in this matter after oral argument, the Department concedes "that Shew's driving was subject to regulation by the Interstate Commerce Commission and within the Section 13(b) (1) exemption to the Fair Labor Standards Act." We agree.
 
 
 10
 As to the dismissal of the suit against Rogers, Regional Director, we have already ruled twice on this question, adversely to Southland's contention, in Rogers v. Skinner, 5 Cir., 1953, 201 F.2d 521, and Rogers v. B & B Vending Company, 5 Cir., 1957, 250 F.2d 120. In these cases, the same Regional Director Rogers was sued in declaratory actions as to the applicability of the Fair Labor Standards Act to plaintiff's employees. In Skinner, the Court held that the action was "a suit against a subordinate official, in his official capacity, to secure an adjudication binding upon his superior and in fact binding upon the Government in the execution of the statute," and that the Secretary of Labor was an indispensable party. B & B Vending Company reaffirmed the Skinner ruling. Here, it is true that Rogers is sued in his individual or personal capacity under alleged conduct claimed to be outside the scope of his delegated authority, but the allegations in B & B Vending Company where Rogers was said by the employer to be guilty of "willful oppression under color of law in connection with the enforcement of said Act" and in Skinner where the employer was said to be aggrieved, harrassed and persecuted by Rogers in advising employees of their rights to sue for overtime compensation, present no substantial factual difference. It is obvious that the actions complained of in the present case were performed by Rogers in his official capacity in advising the employee Shew, as a member of the public, of his rights under the Act, and we see no distinction between the facts here and those in our prior two decisions to which we have referred. By this ruling we are not undertaking to say that actions may not be taken against the Secretary himself in injunction and declaratory suit.[7] Here we are dealing with Rogers, the Regional Director, under the facts and circumstances of this case.
 
 
 11
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 The complaint alleged that Rogers had threatened to cause legal proceedings to be instituted by Shew against Southland, and to induce Shew to file such a suit, if back overtime compensation was not paid
 
 
 [2]
 In response to our request the Solicitor of Labor by letter informed the Court about the Secretary of Labor's official recommendations to amend or repeal the Fair Labor Standards Act exemption in Section 13(b) (1) as follows:
 "The annual reports for the fiscal years ending June 30, 1947 and June 30, 1964 both refer to such recommendations. The 1947 report states that the Wage-House Administrator had recommended to Congress modifications in the exemption for motor carrier employees (by limiting it to employees actually covered by I.C.C. regulations), as well as the exemptions for seamen, and for employees handling and processing agricultural products and seafood, and expansion of the child labor prohibitions. These recommendations were not adopted. The 1964 report states that the Secretary had appeared before the General Subcommittee on Labor of the House Committee on Education and Labor to recommend expansion of the Act's general coverage, as well as modification of the exemptions for employees of motor carriers (by limiting the exemption to certain drivers and drivers' helpers), as well as of the exemptions relating to air carriers, oil pipelines, gasoline service establishments, and processors of agricultural products. While these recommendations were incorporated in a proposed bill (H.R. 9824 and S. 2487, 88th Congress), the bill was never reported out of committee.
 "In addition to the foregoing, our research indicates that among the great number of bills introduced in Congress for amending the Fair Labor Standards Act, there has been at least one introduced in each Congress since 1947 (except for the 83rd and 89th) which contained provision for eliminating or limiting (generally to drivers) the Section 13(b) (1) exemption. Each such bill also contained provisions for many other changes in the Act, such as expanding coverage, limiting other exemptions, or raising the minimum wage, but none of them were ever reported out of committee."
 
 
 [3]
 The Interpretative Bulletin, in pertinent part, is found in Code of Federal Regulations, § 782.7(b) (2), and reads as follows:
 "(2) The Interstate Commerce Commission has held that transportation confined to points in a single State from a storage terminal of commodities which have had a prior movement by rail, pipeline, motor or water from an origin in a different State is not in interstate or foreign commerce within the meaning of Part II of the Interstate Commerce Act if the shipper has no fixed and persisting transportation intent beyond the terminal storage point at the time of shipment. See Ex parte No. MC-48 (71 M.C.C. 17, 29). The Commission has specifically found that there is no fixed and persisting intent where (i) at the time of shipment there is no specific order being filled for a specific quantity of a given product to be moved through to a specific destination beyond the terminal storage, and (ii) the terminal storage is a distribution point or local marketing facility from which specific amounts of the product are sold or allocated, and (iii) transportation in the furtherance of this distribution within the single State is specifically arranged only after sale or allocation from storage. While Ex parte No. MC-48 deals with petroleum and petroleum products, the determination indicates that the same reasoning applies to general commodities moving interstate into a warehouse for distribution (71 M.C.C. at 27). Accordingly, employees engaged in such transportation are not subject to the Motor Carrier Act and therefore not within the section 13(b) (1) exemption. They may, however, be engaged in commerce within the meaning of the Fair Labor Standards Act."
 
 
 [4]
 In the Secretary's memorandum in this case, he states:
 "As pointed out at oral argument, this position is not legally inconsistent with that which Regional Director Rogers initially expressed to Southland's representatives, since Rogers' opinion was based upon an understanding of the facts which differed from the facts stipulated. Thus, it was Rogers' understanding that orders were placed by the branch establishments against out-of-state shipments which had already arrived in Dallas, thereby presenting a situation in which, under the criteria enunciated in the above cited decision of the Commission, there would be `no fixed and persisting transportation intent for delivery beyond the terminal storage point at the time of shipment' (see the Commission's memorandum, p. 6)." (Emphasis supplied.)
 
 
 [5]
 See Determination of Jurisdiction Over Transportation of Petroleum and Petroleum Products by Motor Carriers Within a Single State (Ex Parte No. MC-48), 71 M.C.C. 17, in which the Interstate Commerce Commission discussed at length the applicable criteria
 
 
 [6]
 The rule of law in these decisions is not affected by the enactment in 1962 of 28 U.S.C.A. § 1361 and 28 U.S.C.A. § 1391 (e)
 Section 1361 provides:
 The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.
 Section 1391(e) provides:
 A civil action in which each defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, may, except as otherwise provided by law, be brought in any judicial district in which: (1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, or (4) the plaintiff resides if no real property is involved in the action. The summons and complaint in such an action shall be served as provided by the Federal Rules of Civil Procedure except that the delivery of the summons and complaint to the officer or agency as required by the rules may be made by certified mail beyond the territorial limits of the district in which the action is brought.
 The legislative history relating to the passage of these sections (Senate Report No. 1992, 88th Cong., 1st Sess., U.S.Code Cong. News (1962), pp. 2784, 2785) shows that the "legislation does not create new liabilities or new causes of action against the U. S. Government," but was intended only to make it possible to bring actions against Government officials and agencies in United States district courts outside the District of Columbia which heretofore could only be brought in the District of Columbia.
 
 
 [7]
 See Wirtz v. Fowler, 5 Cir., 1966, 372 F.2d 315, which involved a declaratory suit against the Secretary of Labor, but the Government did not pursue its objections to the suit and counterclaimed for injunctive relief. Also, Wirtz v. Atlantic States Construction Company, 5 Cir., 1966, 357 F.2d 442. Another such case is pending before us, awaiting decision, i.e., Wirtz v. Osceola Farms Company, Docket No. 22687