George POWELL and Viliam Kralovic, Plaintiffs,

v.

CAREY INTERNATIONAL, INC., Carey Limousine Florida, Inc., and Vince Wolfington, an individual, Defendants.

Nos. 05 21395 CIV, 05 21395 CV.

United States District Court, S.D. Florida.

March 17, 2006.

Chris Kleppin, Harry O. Boreth, Glasser Boreth Ceasar & Kleppin, Plantation, FL, for Plaintiffs.

Alexander D. Del Russo, Carlton Fields, P.A., West Palm Beach, FL, Kristy Marie Johnson, Patricia Halvorson Thompson, Michael Adam Shafir, Carlton Fields, Miami, FL, for Defendants.

### ORDER DENYING MOTION FOR SUMMARY JUDGMENT

SEITZ, District Judge.

This is a Fair Labor Standards Act ("FLSA") case. Plaintiffs George Powell and Viliam Kralovic, on behalf of themselves and all other similarly situated limousine drivers, seek recovery of unpaid overtime compensation from Defendants. Before the Court is Defendants' Motion for Summary Judgment, in which Defendants Carey International, Inc. and Carey Limousine Florida, Inc. (collectively "Defendants") contend that they are entitled to summary judgment because Plaintiffs are exempt employees under the motor carrier exemption and the taxi driver exemption.[1] Having reviewed the motion, the response, and the reply thereto, as well as all relevant portions of the record, and after hearing the oral argument of the parties, the Court denies Defendants' Motion for Summary Judgment.

As to the motor carrier exemption, Defendants' travel arrangements with customers and destination management companies does not subject them to the jurisdiction of the Secretary of Transportation (the "Secretary") as a matter of law. Furthermore, because genuine issues of fact exist as to whether Defendants have a through ticketing arrangement with an airline company.

---

1. Although Defendants styled their motion as one to dismiss, the Court converted the motion to dismiss into one for summary judgment. (*See* DE–72.) The Court permitted dis-

covery as to the two exemptions to enable the parties to ensure that all relevant evidence was before the Court.

Defendants are not entitled to summary judgment on this ground. Finally, as to the taxi cab exemption, Defendants have not shown by a preponderance of the evidence that they are in the "business of operating taxicabs."

## I. Background

Carey International, Inc. ("Carey International") arranges chauffeured transportation services for its customers through a system of franchised and affiliated companies. (Defs.' Statement of Material Facts, Ex. A ¶ 4.) In order to book a reservation, Carey International's customers contact the Carey International Reservation System, and in turn, Carey International arranges the chauffeured transportation with one of its affiliated companies. (*Id.*, Ex. A ¶ 4.) These companies act as subcontractors to Carey International, and thus, they bill Carey International for all services provided. (*Id.*, Ex. A ¶ 5.) Carey International, in turn, charges its customers for the services it has arranged. (*Id.*, Ex. A ¶ 5.)

Carey International owns Defendant Carey Limousine Florida, Inc. ("Carey South Florida"). (*Id.*, Ex. B ¶ 1.) Carey South Florida provides two types of chauffeured transportation services for compensation: (1) services for the local community, which includes services under contracts with local hotels, and services for local businesses and local residents of Miami–Dade, Broward, and Palm Beach counties; and (2) services for customers of Carey International and its franchised or affiliated companies, including destination management services. (*Id.*, Ex. B ¶ 3.) Providing ground transportation for the local

community comprises approximately 47% of the base revenue of Carey South Florida's business, whereas providing ground transportation for customers of Carey International and its franchised and affiliated companies comprises approximately 37% of the base revenue of Carey South Florida's business.[2] (*Id.*, Ex. B ¶ 3.) Neither party disputes that Plaintiffs do not drive across state lines.

### A. The Motor Carrier Exemption

Defendants contend that Plaintiffs are exempt employees under the FLSA based on three aspects of their business: (1) their through ticketing arrangements; (2) their prearranged travel services; and (3) their destination management services. As to the first aspect of their business, Defendants argue that Plaintiffs are exempt employees under the FLSA based on their through-ticketing arrangement with Virgin Atlantic Airways Ltd. ("Virgin Atlantic"). According to Defendants, on June 2, 1997, Carey International purchased Manhattan International Limousine Network, Ltd. ("Manhattan Limousine"). (*Id.*, Ex. C ¶ 5.) Thereafter, on July 11, 1997, Manhattan Limousine and Virgin Atlantic entered into a contract to exclusively provide chauffeured transportation services for Upper Class passengers to and from John F. Kennedy International Airport and Newark Liberty International Airport. (*Id.*, Ex. C ¶ 6.) Once an Upper Class passenger purchased a ticket to one of the destinations serviced by Manhattan Limousine, such passenger automatically received complimentary airport transportation. (*Id.*, Ex. C ¶¶ 13–14.)

Sometime in 1999, Virgin Atlantic decided to extend its services to Upper Class

---

2. The remaining revenue is derived from services that are not relevant to this litigation, such as the University of Miami shuttle bus, which is driven by employees who are paid overtime. (*See* Defs.' Summary of Key Facts, dated October 20, 2005, at 6 n. 3.)

passengers to include the Miami International Airport. (*Id.*, Ex. C ¶ 15.) According to Carey International's President and Chief Executive Office, Devon Murphy, in order to provide such services, Virgin Atlantic has an agreement with Manhattan Limousine, which in turn has an agreement with Carey South Florida, and such arrangement is "essentially a three-part[y] agreement," pursuant to which Virgin Atlantic requires Carey South Florida to have employees in Miami to service its customers. (Defs.' Reply, Ex. 5 at 107–09.) However, Manhattan Limousine's Regional Vice President, Edward Martinez, testified that Manhattan Limousine contracted directly with Carey South Florida regarding the Virgin Atlantic business. (Defs.' Statement of Material Facts, Ex. C ¶ 10.) Thus, the facts are in dispute as to whether there is a direct agreement between Virgin Atlantic and Carey South Florida.

Nevertheless, the parties do agree that the arrangement works as follows: each night, Manhattan Limousine faxes to Carey South Florida flight information for Virgin Atlantic Upper Class passengers arriving or departing from Miami the following day. (*Id.*, Ex. C ¶ 16.) Thereafter, Carey South Florida contacts Manhattan Limousine with a confirmation number for the job, and subsequently contacts Manhattan Limousine once the job is completed. (*Id.*, Ex. C ¶ 16.) At that point, Manhattan Limousine bills Virgin Atlantic for the job, and Virgin Atlantic remits payment to Manhattan Limousine, which Manhattan Limousine forwards in whole to Carey South Florida. (*Id.*, Ex. C ¶ 16.) Carey South Florida derives approximately 3% of its base revenue from the chauffeured transportation it provides to Virgin Atlantic Upper Class passengers.[3] (Defs.' Summary of Key Facts, dated October 20, 2005, at 6 n. 2.)

■ Defendants also contend that they have through ticket arrangements with private air carriers, such as Sentient Jet, Inc., Charter Auction, Inc., Universal Weather and Aviation, Inc., Bombardier Flexjet, Net Jets, and Marquis Jets. However, these facts and arguments are entirely new, and not responsive to Plaintiffs' Response. Accordingly, the Court will not consider such arrangements at this juncture.[4]

In addition to their alleged through ticket arrangements, Defendants also have contracts for chauffeured transportation with corporate clients, such as Goldman Sachs and IBM. (Defs.' Statement of Material Facts, Ex. A ¶ 6.) Pursuant to these agreements, the corporations pay Carey International for transportation when their executives travel interstate or out of the country. (*Id.*, Ex. A. ¶ 6.) Under the terms of the contracts, the corporations contact Carey International on an as needed basis, and Carey International then

---

**3.** Although Defendants first disclosed the history of the relationship between Carey South Florida and Virgin Atlantic in its Reply Brief, the Court has considered the same to the extent such facts refute Plaintiffs' argument that Carey South Florida does not have an agreement with Virgin Atlantic.

**4.** In separate orders, this Court denied Plaintiffs' Motions to Strike the Reply Brief and to Strike Exhibits because Plaintiffs failed to demonstrate that they were entitled to the requested relief. Nevertheless, the Court cannot consider new arguments raised for the first time in a reply brief. *See Herring v. Secretary. Dept. of Corrections*, 397 F.3d 1338 (11th Cir.2005) (citation omitted) (stating, "[a]s we repeatedly have admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'").

contacts the appropriate franchised or affiliated company to provide the transportation services. (*Id.*, Ex. A ¶ 6.) The franchised or affiliated company then bills Carey International, and Carey International bills the private company's account. (*Id.*, Ex. A ¶ 6.) Carey South Florida derives approximately 21% of its revenue from these services. (Defs.' Summary of Key Facts, dated October 20, 2005, at 6 n. 2.)

Carey South Florida also regularly provides airport chauffeured services to destination management companies. (Defs.' Statement of Material Facts, Ex. B ¶ 14.) Destination management companies sell travel packages to individuals and companies, usually located outside of Florida. (*Id.*, Ex. B ¶ 14.) These companies sell travel packages that include airport transportation in conjunction with other travel related products through an arrangement that incorporates Defendants' costs into the overall price charged to the traveler. Therefore, the traveler does not pay directly for Defendants' services. (*Id.*, Ex. B ¶ 14.) Carey South Florida derives approximately 13% of its revenue from these services. (Defs.' Summary of Key Facts, dated October 20, 2005, at 6 n. 2.)

## B. The Taxi Cab Exemption

Carey South Florida prearranges all of its services, and accordingly, drivers cannot typically obtain customers by cruising the streets. (*See* Defs.' Statement of Material Facts, Ex. B ¶ 6.) Thus, if a driver is approached by a customer who has not prearranged transportation services, the driver must contact the local dispatch office to record a reservation for that customer or have dispatch send another vehicle to transport such customer. (*Id.*, Ex. B ¶ 6.) The customer dictates the destina-

tion and, if requested, the route to be traveled. (*Id.*, Ex. B ¶ 7.)

Carey South Florida's fares are determined by the hour or by a flat rate. (*Id.*, Ex. B ¶ 8.) For instance, a customer traveling from the airport to a specified location, such as Miami Beach, will be charged a flat rate, regardless of the time of travel. (*See id.*, Ex. B ¶ 8.) If the customer does not specify an exact drop-off location, the number of hours required, or the number of stops over the course of the trip, the service will be considered an "as directed" job and an hourly rate will apply. (*Id.*, Ex. B ¶ 8.) Moreover, Carey South Florida's drivers rarely, if ever, transport more than one fare at one time. (*Id.*, Ex. B ¶ 7.)

Carey South Florida does maintain a limited number of service agreements with local hotels. (*Id.*, Ex. B ¶ 9.) Through these agreements, Carey South Florida drivers are available at the various hotels to service arriving or departing hotel guests. (*Id.*, Ex. B ¶ 9.) Unfortunately, the record reflects neither the exact number of agreements between Carey South Florida and local hotels nor the percentage of Carey South Florida's base revenue attributed to these agreements.

Carey South Florida is regulated by local county ordinances. (*Id.*, Ex. B ¶ 10.) In Broward and Palm Beach counties, Carey South Florida's fleet is considered "for hire" transportation, whereas in Miami–Dade county, the majority of Carey South Florida's vehicles fall under the definition of "Limousine." (*Id.*, Ex. B ¶ 10.) In addition, Carey South Florida maintains occupational licenses in Miami–Dade, Broward, and Palm Beach counties which classify its business as vehicles for hire, transportation service, or limousine service. (*Id.*, Ex. B ¶ 11.)

Carey South Florida's fleet for the transportation of services described above

consists primarily of luxury sedans. (*Id.*, Ex. B ¶ 4.) However, additional vehicles such as vans, stretch limousines, minibuses, SUVs, and motor coaches are available to transport customers and their luggage. (*Id.*, Ex. B ¶ 4.) Thus, while Carey South Florida advertises itself as a "worldwide chauffeured transportation service," it can also be found in local phone books and visitor's guides under categories such as "Limousine, Taxi and Transportation Services," "Transportation Services," "Limousine Service," and "Airport Transportation." (*Id.*, Ex. B ¶ 12.)

## II. Standard of Review

Summary judgment is appropriate when "the pleadings ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56). Accepting this evidence as truthful, the Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether " 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997) (quoting *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505). In determining whether to grant summary judgment, the district court must

remember that "credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

■■■ Turning to the applicable law in this case, the FLSA prohibits an employer from subjecting an employee to a workweek consisting of more than forty hours without receiving compensation at a rate not less than one and one-half times the regular rate at which he is employed. 29 U.S.C. § 207(a)(1). However, the FLSA also provides a myriad of exceptions and exemptions from the general overtime requirement. *See Kuchinskas v. Broward County*, 840 F.Supp. 1548, 1556 (S.D.Fla. 1993), *aff'd*, 86 F.3d 1168 (11th Cir.1996). Defendants contend that Plaintiffs are exempt employees under the motor carrier exemption and the taxi driver's exemption. "The determination of whether a given employee falls within the scope of an FLSA exemption, while based on the underlying facts, is ultimately a legal question." *Viart v. Bull Motors, Inc.*, 149 F.Supp.2d 1346, 1349 (S.D.Fla.2001). Exemptions are to be "narrowly construed against the employers seeking to assert [it]." *Arnold v. Ben Kanowsky Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960). Moreover, application of an exemption is limited to those circumstances plainly and unmistakably within the exemptions's terms and spirit. *See id.* at 392, 80 S.Ct. 453. Finally, under the FLSA, the employer has the burden of establishing the applicability of an exemption by a preponderance of the evidence. *Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562, 1566 n. 5 (11th Cir. 1991). For the reasons stated below, Defendants have failed to meet their burden of establishing either exemption.

## III. The Motor Carrier Exemption

The motor carrier exemption, 29 U.S.C. § 213(b)(1), mandates that overtime pay is not required for any employee with respect to whom the Secretary of Transportation has power to establish "qualifications and maximum hours of service pursuant to section 31502" of the Motor Carrier Act ("MCA").[5] Thus, the Department of Labor ("DOL") regulations provide that the motor carrier exemption applies if the following two-part test is met: (1) the employee plaintiff must be employed by carriers whose transportation of passengers is subject to the Secretary's jurisdiction under section 204 of the MCA; and (2) the employee plaintiff engages in activities of a character directly affecting the safety of operation of motor vehicles in interstate or foreign commerce within the meaning of the MCA. 29 C.F.R. § 782.2. Here, given that Defendants have not met the first part of the two-prong test, they are not entitled to summary judgment.

## A. Defendants Are Not Subject To The Jurisdiction Of The Secretary Of Transportation

First, the Court must consider whether Defendants are subject to the jurisdiction of the Secretary of Transportation. Section 13501 gives the Secretary jurisdiction over transportation by motor carrier if, *inter alia*, it transports persons by motor carrier between a place in a state and a place in another state. 49 U.S.C. § 13501.[6] With respect to this requirement, most courts provide that even if the employee carrier does not cross state lines, the interstate commerce requirement is satisfied if the goods being transported within the borders of one State are involved in a "practical continuity of movement in the flow of interstate commerce." *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 568, 63 S.Ct. 332, 87 L.Ed. 460 (1943); *Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217 (2nd Cir.2002).[7] Here, Carey South Florida contends that three aspects of its business satisfy the

---

5. As there is no concurrent jurisdiction between the FLSA and the MCA, Plaintiffs are not entitled to overtime benefits if they are subject to the jurisdiction of the Secretary of Transportation. *See Shew v. Southland Corp.*, 370 F.2d 376, 380 (5th Cir.1966). The MCA provides that the Secretary has jurisdiction "over transportation by motor carrier ... to the extent that passengers, property, or both, are transported by motor carrier between a place in ... a State and a place in another State." 49 U.S.C. § 13501.

6. The complete text of Section 13501 reads as follows:

The Secretary [of Transportation] and the [Surface Transportation] Board have jurisdiction, as specified in this part, over transportation by motor carrier and the procurement of that transportation, to the extent that passengers, property, or both, are transported by motor carrier—
(1) between a place in—
(A) a State and a place in another State;

(B) a State and another place in the same State through another State;
(C) the United States and a place in a territory or possession of the United States to the extent the transportation is in the United States;
(D) the United States and another place in the United States through a foreign country to the extent the transportation is in the United States; or
(E) the United States and a place in a foreign country to the extent the transportation is in the United States; and
(2) in a reservation under the exclusive jurisdiction of the United States or on a public highway.
49 U.S.C. § 13501.

7. *But See Packard v. Pittsburgh Transp. Co.*, 418 F.3d 246, 259 (3rd Cir.2005) (J. Nyggard, concurring). (finding that the plain language of the MCA only provides jurisdiction to the Secretary where the motor carrier actually crosses state lines). While Plaintiffs' urge this Court to adopt Judge Nyggard's position, the

interstate commerce requirement: (1) their prearranged travel arrangements with corporate customers; (2) their prearranged travel with destination management companies; and (3) their through ticket arrangement with Virgin Atlantic. The Court will address each of these arguments in turn.

 1. *Defendants Prearranged Travel Arrangements With Customers And Destination Management Companies Do Not Subject Them To The Jurisdiction Of The Secretary As A Matter Of Law.*

 With respect to Defendants' first two arguments, the Court finds that such arrangements do not, as a matter of law, satisfy the motor carrier exemption because a through ticketing or common arrangement with the interstate motor carrier is required to bring Defendants' company within the stream of interstate commerce such that it is subject to the jurisdiction of the Secretary. The issue of whether transportation that occurs entirely within one state can constitute interstate commerce has been examined by numerous courts in a myriad of contexts. For instance, several courts, including the Eleventh Circuit, have held that entirely local transportation to and from hubs such as railroad stations and airports of passengers is itself the practical continuous interstate transportation of passengers. *See United States v. Yellow Cab Co.*, 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed.

2010 (1947); *Executive Town & Country Servs. v. City of Atlanta*, 789 F.2d 1523 (11th Cir.1986); *Charter Limousine v. Dade County Board of County Commissioners*, 678 F.2d 586 (5th Cir. Unit B 1982).[8] Thus, Defendants argue effectively that their drivers are part of the practical continuity of movement in the flow of interstate commerce, even though their drivers provide purely intrastate services.

Defendants' cases, however, do not construe the terms "interstate commerce" or "interstate transportation" as used in either the FLSA or the MCA, and accordingly, are not controlling. Indeed, the term "interstate commerce" has a different and more narrow meanings for purposes of the FLSA and its exemptions than when used in Commerce Clause jurisprudence. *See Marshall v. Victoria Transportation Co., Inc.*, 603 F.2d 1122, 1124 (5th Cir. 1979) (holding that reliance on *Yellow Cab* in evaluating claims and exemptions under the FLSA is problematic because that case "in an antitrust suit in which the broader Fair Labor Standards Act coverage precedents are not applicable.").[9] Accordingly, the analysis here must focus on the purposes of the FLSA and the MCA and the meaning of the term "interstate commerce" as applied in those acts.

 The FLSA was enacted to protect workers from substandard wages and oppressive working hours. *Barrentine v. Arkansas–Best Freight System*, 450 U.S. 728, 101 S.Ct. 1437, 1444, 67 L.Ed.2d 641

---

Court need not reach this issue, as Defendants have not satisfied their burden under the "practical continuity of movement" theory.

8. In *Stein v. Reynolds Securities Inc.*, 667 F.2d 33 (11th Cir.1982), the Eleventh Circuit adopted as binding precedent all of the post-September 30, 1981, decisions of Unit B of the former Fifth Circuit. *Id.* at 34.

9. *See also Gulf Oil Corp. v. Copp Paving Co., Inc.*, 419 U.S. 186, 196–97, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974) (cautioning against the reliance in antitrust litigation on prior cases arising under the FLSA).

(1981). Thus, "[t]he Act has been construed liberally to apply to the furthest reaches consistent with congressional direction." *Mitchell v. Lublin, McGaughy & Associates,* 358 U.S. 207, 211, 79 S.Ct. 260, 3 L.Ed.2d 243(1959). Accordingly, while the FLSA covers all employees engaged in commerce, the MCA covers only those motor carriers that are subject to the jurisdiction of the Secretary of Transportation in that they are actually part of a continuous movement in interstate commerce. *Baird v. Wagoner Transp. Co.,* 425 F.2d 407, 410 (4th Cir.1970). *See also* 29 C.F.R. § 782.7(a) (stating, "[f]or this reason, the interstate commerce requirements of the section 13(b)(1) exemption are not necessarily met by establishing that an employee is 'engaged in commerce' within the meaning of the Fair Labor Standards Act"). Thus, although Defendants urge the Court to adopt a broad reading of the term interstate commerce, in order for the exemption to apply, the Secretary of Transportation must plainly and unmistakably have jurisdiction. As to this issue, the Interstate Commerce Commission ("ICC") and its successor, the Surface Transportation Board ("STB") are the authoritative bodies for determining the jurisdictional scope of the MCA. *See Charter Limousine,* 678 F.2d at 588 (noting that courts generally give deference to the decisions of an administrative agency).[10]

These agencies have clearly defined the scope of the Secretary's jurisdiction.

In *Motor Transportation of Passengers Incidental to Air,* 95 M.C.C. 526, 536 (1964), the ICC held that the motor transportation of passengers between an airport and another point in the state by a motor carrier "operating wholly within a state, selling no through tickets, and having no common arrangements with connecting out-of-State carriers," represents intrastate commerce regardless of the passengers' intention to continue or complete an interstate journey. As stated by the ICC, "... regardless of the intentions of any passengers to continue or complete an interstate journey, a carrier of passengers solely within a state, selling no through tickets, and having no common arrangements with out-of-state carriers, is not engaged in interstate or foreign commerce." *Id.* Likewise, in *In re Kimball,* 1980 WL 14197, 131 M.C.C. 908 (1980), the Surface Transportation Board ("STB") held that a motor carrier is not involved in the practical continuity of movement in the flow of interstate commerce unless there is an arrangement between the motor carrier and an air carrier for continuous passage or interchange. *Id.* at 916–18. Accordingly, arrangements between travel and tour agencies are insufficient to bring a motor carrier's operations within the MCA. *Id.* at 917–18. *See also Garcia v. Carey Interna-*

---

**10.** In *Charter Limousine,* the Fifth Circuit construed the term interstate commerce in a dispute over whether certain county restrictions placed an unreasonable restriction on commerce. Thus, the Fifth Circuit held that in construing the commerce clause, it was not bound by the ICC's determination that a direct contract between the motor carrier and air carrier is required to bring a motor carrier's actions within the scope of interstate commerce because the ICC "did no more than attempt to narrow its jurisdiction." *Charter Limousine,* 678 F.2d at 588. However-

er, the ICC's decisions are binding on this Court to the extent they set forth the requirements necessary to bring a motor carrier within the jurisdiction of the Secretary. 29 C.F.R. 782.7(b)(1) (stating, "[w]here ... it has been authoritatively held that transportation of a particular character within a single State is not in interstate commerce as defined in the Motor Carrier Act ..., there is no basis for an exemption under section 13(b)(1), even though the facts may establish a 'practical continuity of movement' from out-of-State sources.").

*tional, Inc.,* Case No. 04–21074–Civ–Ungaro, Order Denying Defendants' Motion for Summary Judgment As To The Garcia and Cartun Claims–Motor Carrier Exemption, at 5–11 (December 10, 2004). Accordingly, based on these decisions, the Court finds that a through ticketing arrangement is a requirement to bring Defendants within the jurisdiction of the Secretary.

### 2. *Genuine Issues Of Material Fact Exist As To Whether Defendants Have A Through Ticket Arrangement With Virgin Atlantic*

 Finally, as to Defendants' contention that their through ticket arrangement with Virgin Atlantic subjects them to the jurisdiction of the Secretary, such argument must fail because there are genuine issues of material fact as to whether either Carey International or Carey South Florida have an agreement with Virgin Atlantic. While Defendants contend that there is a three party agreement, the testimony as to this point is conflicting. Moreover, the actual terms of the arrangement suggest that Virgin Atlantic's relationship is with Manhattan Limousine rather than Carey South Florida, as all reservations and payments go through Manhattan Limousine. Accordingly, because there is an issue of material fact as to whether there is a through ticket arrangement between Defendants and Virgin Atlantic, the Court must deny Defendants' motion as to this aspect of Carey South Florida's business.

### IV. The Taxi Cab Exemption

 Defendants also contend that Plaintiffs are exempt employees under the FLSA because they are "driver[s] employed by an employer engaged in the business of operating taxicabs." 29 U.S.C. § 213(b)(17). Chapter 24h of the Department of Labor Field Operations Handbook (1999 ed.) defines the term "business of operating taxicabs" as follows:

> 24h01 "Business of operating taxicabs." The taxicab business consists normally of common carrier transportation in small motor vehicles of persons and such property as they may carry with them to any requested destination in the community. The business operates without fixed routes or contracts for recurrent transportation. It serves the miscellaneous and predominately local transportation need of the community. It may include such occasional and unscheduled trips to or from transportation terminals as the individual passengers may request, and may include stands at the transportation terminals as well as at other places where numerous demands for taxicab transportation may be expected.

Defendants rely on this definition as applied in *Cariani v. D.L.C. Limousine Service, Inc.,* 363 F.Supp.2d 637 (S.D.N.Y. 2005), to support their position.

In *Cariani,* the district court held that the defendant limousine company was in the business of operating taxicabs. Focusing on the definition above, the court found that the defendant fit within the exemption because: (1) its drivers did not cover fixed routes or adhere to fixed schedules; (2) it offered door-to-door service with the time of the trip and the destination determined by the customer; (3) it was not under contract with any airline or other company; and (4) its fares were equivalent to the fares of taxi companies. *Id.* at 644. It was undisputed that the *Cariani* defendant was not regulated as a taxi company, did not advertise itself as a taxi company, did not have its drivers organize their own time, did not allow its drivers to cruise for

passengers, had predetermined fares, and sometimes carried more than one. *Id.* However, according to the court, these factors were not determinative in light of their absence from the Department of Labor's definition of "business of operating taxicabs." *Id.* at 645 (stating, "[t]he F.L.S.A. is a statute of nationwide application. A uniform definition of the term 'business of operating taxicabs' devised by the Department of Labor better serves the purposes of a federal labor law than does application of a variety of local definitions, which are practically guaranteed to lead to different results in different parts of the country.").

■ In the instant case, however, Defendants have not met their burden of establishing the applicability of the taxicab exemption. Although Carey South Florida, like the defendant limousine company in *Cariani*, does not cover fixed routes or adhere to fixed schedules and offers its services with the time of the trip and the destination determined by the customer, Defendants do have contract arrangements with local hotels, corporate clients, and destination management companies, and they utilize large cars that are not traditionally recognized as taxicabs. Moreover, although the *Cariani* court did not find the other factors at issue here to be determinative, this Court finds that the following factors, *inter alia,* are relevant to analyzing whether Carey South Florida "plainly and unmistakably [fits] within the exemptions's terms and spirit:" (1) it advertises itself as a worldwide chauffeured transportation service; (2) its drivers do not cruise for passengers; and (3) its fares are based on a flat or hourly rate, as opposed to a metered rate. Indeed, while these factors are not specifically mentioned in the Department of Labor's definition of "business

of operating a taxicab," and thus may be of less significance, they nevertheless weigh against a finding that Carey South Florida fits within the taxicab exemption. Accordingly, given these facts, neither corporate Defendant is entitled to summary judgment as a matter of law.

## V. Conclusion

For the reasons stated above, it is hereby

ORDERED that Defendants' Motion for Summary Judgment [**DE 41**] is DENIED.