**Robert B. REICH,\* Secretary of Labor; United States Department of Labor, Appellants,**

**v.**

**DELCORP, INC., a corporation; Arizona Carpet Cleaning, Inc., a corporation, Appellees.**

**No. 92–3716.**

United States Court of Appeals, Eighth Circuit.

Submitted May 14, 1993.

Decided Aug. 31, 1993.

---

\* Robert B. Reich has been substituted for Lynn Martin as plaintiff in this case in accordance with Rule 43(c)(1) of the Federal Rules of Appellate Procedure.

Paul Frieden, Washington, DC, argued for appellants.

Eugene DeShazo, Kansas City, MO, argued for appellees.

Before BOWMAN and MAGILL, Circuit Judges, and HENDREN,** District Judge.

MAGILL, Circuit Judge.

The overtime provisions of the Fair Labor Standards Act (FLSA) entitle an hourly worker who works more than forty hours a week to be paid at the rate of one and one-half times his normal wage for each hour over forty hours. *See* 29 U.S.C. § 207(a)(1) (1988). This provision does not apply, however, to employees of a "retail or service establishment" if the employee's regular rate of pay is more than 1.5 times the minimum wage and if "more than half his compensation for a representative period (not less than one month) represents commissions on goods or services." 29 U.S.C. § 207(i) (1988). The Secretary of Labor brought this action to enjoin Arizona Carpet Cleaning, Inc. (ACC), an in-home carpet cleaning business, from paying its employees pursuant to § 207(i) in violation of the FLSA. The Secretary does not contest that ACC's employees are commissioned and that their pay exceeds 1.5 times the minimum wage, but alleges that an in-home carpet cleaning business is a member of the laundry industry and thus as a

matter of law cannot qualify as a "retail or service establishment."

The parties filed cross-motions for summary judgment, the Secretary making the argument noted above, and ACC arguing that it qualified as a "retail or service establishment" under the factors set forth in *Idaho Sheet Metal Works v. Wirtz*, 383 U.S. 190, 86 S.Ct. 737, 15 L.Ed.2d 694 (1966). The district court [1] denied the Secretary's motion, and granted ACC's motion. This appeal followed. We affirm.

The essential facts surrounding this controversy are simple and uncontested. Delcorp and its franchisee, ACC, are engaged in the in-home carpet, rug and furniture upholstery cleaning business. ACC services an area including approximately 100,000 homes, and cleans approximately 4000 homes per year.

ACC obtains business initially through telephone solicitors, who make four calls per year to each home within ACC's market. Two-person field crews, consisting of a crew chief and an assistant, then perform the in-home cleaning operations agreed upon through these solicitations. In addition to their cleaning duties, ACC's crews attempt to sell additional cleaning services and products while in the customer's home. Crews also solicit from customers names of others who may be interested in ACC's cleaning services, and give discount coupons for each referral.

ACC's telephone solicitations account for approximately one-half of the total dollar volume of sales per home serviced. The field crew's sales of additional services and products, as well as the customer referrals they receive, account for the balance of ACC's income.

ACC compensates all of its field crew members on a commission basis. Each crew member's wages exceed one and one-half times the minimum wage, and crew members often work more than forty hours per week. ACC sells its products and services exclusively for family or personal use and exclu-

---

** The Honorable Jimm L. Hendren, United States District Judge for the Western District of Arkansas, sitting by designation.

1. The Honorable D. Brook Bartlett, United States District Judge for the Western District of Missouri.

sively to the general public. The parties agree that nearly all householders have their rugs and upholstery cleaned in the home, either by ACC, one of its competitors, or with equipment and supplies procured from local retail stores.

In order to qualify for treatment under § 207(i), ACC must demonstrate that it is a "retail or service establishment." Section 207(i) does not define that term; instead, we must turn to § 213(a)(2). This section wholly exempts certain "retail or service establishment[s]" from FLSA coverage [2] and defines "retail or service establishment" as "an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry." 29 U.S.C. § 213(a)(2); *see also* 29 C.F.R. § 779.411 (1992) (definition of "retail or service establishment" the same in both § 213(a)(2) and § 207(i)). In the district court proceeding, ACC presented evidence that it constituted a "retail or service establishment" as that term has been construed by the Supreme Court. The Secretary did not oppose this line of argument; rather, the Secretary claims that as a matter of law, an "establishment ... engaged in laundering, cleaning, or repairing clothing or fabrics" cannot qualify as "retail or service establishment" for purposes of § 207(i).

■ We must deal with one preliminary issue. In 1989, Congress repealed the § 213(a)(2) "retail or service establishment" exemption, including its definition of "retail or service establishment." In its place, Congress substituted a provision that exempts all small enterprises with a total annual sales volume of less than $500,000 from the FLSA's requirements. Pub.L. No. 101–157, § 3(a) and (c), 103 Stat. 938–39 (1989);

H.R.Rep. No. 260, 101st Cong., 1st Sess. 18 (1989), *reprinted in* 1989 U.S.C.C.A.N. 696, 706. Congress did not, however, repeal § 207(i) nor change its dependence on the definition of "retail or service establishment."

ACC initially claims that Congress's 1990 repeal of the § 213(a)(2) exemption also repealed the judicial and administrative construction of that term as it appears in § 207(i). Since this action concerns only ACC's future compliance with the FLSA, ACC contends that this court must evaluate whether it constitutes a "retail or service establishment" pursuant to the "ultimate consumer" test used by the courts prior to the 1949 amendments rather than under the repealed definition from § 213(a)(2). We disagree.

When Congress passed § 207(i) in 1961, it specifically stated that the term "retail or service establishment" was to have the same meaning in that section as it did in § 213(a)(2). *See* 29 C.F.R. § 779.411 (1992). Thus, any construction of the term as defined in § 213(a)(2) became a part of the definition of the term as found in § 207(i). Nothing in the 1990 amendments changed § 207(i). The term "retail or service establishment" still remains, and there is no expression of congressional intent that it should be construed any differently. Absent specific congressional intent, we will not conclude that Congress retained the term "retail or service establishment" in § 207(i) yet at the same time discarded thirty years of established meaning. We thus must determine whether ACC could constitute a "retail or service establishment" under the definition of that term that existed in § 213(a)(2) and § 207(i) prior to 1990.

■ We begin our analysis with the text of the statute. Section 213(a)(2)'s definition of

---

2. Section 213(a)(2) provides:

(a) The provisions of sections 6 (except section 6(d) in the case of paragraph (1) of this subsection) and 7 shall not apply with respect to—

    \*    \*    \*    \*

(2) any employee employed by any retail or service establishment (except an establishment or employee engaged in laundering, cleaning, or repairing clothing or fabrics or an establishment engaged in the operation of a hospital, institution, or school described in section

3(s)(5)), if more than 50 per centum of such establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located, and such establishment is not in an enterprise described in section 3(s). A "retail or service establishment" shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry.... 29 U.S.C. § 213(a)(2).

"retail or service establishment" does not on its face exclude "laundries"[3] from its scope. The Secretary claims, however, that when Congress enacted the definition in 1949, it specifically excluded laundries from the class of businesses that could qualify as a "retail or service establishment." In addition to amending § 213(a)(2) to add the definition of "retail or service establishment," Congress in 1949 added a new § 213(a)(3) which provided a specific exemption for "any employee employed by any establishment engaged in laundering, cleaning, or repairing clothing or fabrics...." Pub.L. No. 81–393, ch. 736, § 11(a)(3), 63 Stat. 910, 917 (1949). According to the legislative history, this special exemption was deemed necessary because "there is no clear concept in the laundry and cleaning industry of retail services." 95 Cong.Rec. S12,503 (1949) (Statement of Sen. Holland).

Based on this legislative history, the Secretary claims that a laundry can never qualify as a "retail or service establishment." The Secretary's argument is not without some support. In two cases, the Supreme Court has recognized that in the legislative history to the 1949 amendments, Congress excluded certain businesses from the scope of the "retail or service establishment" exemption. *See Mitchell v. Kentucky Fin. Co.*, 359 U.S. 290, 79 S.Ct. 756, 3 L.Ed.2d 815 (1959) (holding that a corporation engaged in the business of making personal loans and purchasing accounts receivable could not qualify as a "retail or service establishment" as a matter of law); *Idaho Sheet Metal Works v. Wirtz*, 383 U.S. 190, 203, 86 S.Ct. 737, 745, 15 L.Ed.2d 694 (1966) (noting that "[t]he legislative recital of telephone, gas and electric, and credit companies along with a number of others as businesses outside the [§ 13(a)(2) ] exemption ... demonstrates that not everything the consumer purchases can be a retail sale of goods or services"). If nothing had happened since the 1949 amendments, we would be constrained to hold that laundries cannot qualify as a "retail or service establishment." We conclude, however, that post–1949 amendments to the FLSA fatally undermine the Secretary's argument that laundries

can never qualify as a "retail or service establishment."

In 1961, Congress enacted § 207(i), which allows "retail or service establishment[s]" not qualifying for the § 213(a)(2) exemption to comply with the FLSA's overtime requirements by paying its commissioned employees at a rate exceeding one and one-half times the minimum wage for all hours worked. Congress specified that the § 213(a)(2) definition of "retail or service establishment" apply to § 207(i). *See* 29 C.F.R. §§ 779.312, 779.411 (1992).

In 1966, Congress decided to extend FLSA coverage to the laundry industry generally. Thus, Congress repealed the § 213(a)(3) exemption for laundries and added § 203(s)(2) to extend minimum wage and overtime coverage over those enterprises "engaged in laundering, cleaning, or repairing clothing or fabrics." Pub.L. No. 89–601, §§ 102, 202, 80 Stat. 830, 831–33 (1966). Congress further amended § 213(a)(2) to exempt from the overtime and minimum wage requirements "any employee employed by any retail or service establishment (*except an establishment or employee engaged in laundering, cleaning, or repairing clothing or fabrics or an establishment engaged in the operation of a hospital, institution, or school described in section 3(s)(4)* )...." *Id.* at § 201, 80 Stat. at 833.

The Secretary claims that by excluding laundries from the class of businesses able to qualify for the § 213(a)(2) exemption, Congress continued its intent that laundries could never qualify as a "retail or service establishment." We disagree.

Instead, we conclude that while Congress clearly manifested an intent in 1966 to prevent laundries from qualifying for the § 213(a)(2) exemption, it did not demonstrate an intent to prevent laundries from qualifying under § 207(i).

First, there is nothing inconsistent with a business qualifying for the § 207(i) method of compliance but failing to qualify for the § 213(a)(2) exemption. In fact, that is how

---

**3.** For convenience, we refer to establishments engaged in laundering, cleaning, or repairing clothing or fabrics as "laundries," "laundry," or "laundry and cleaning establishments."

the two provisions necessarily work together: in order to qualify for § 207(i), a business must meet some, but not all, of the requirements for § 213(a)(2).

Second, unless after the 1966 amendments there is some possibility that a laundry can qualify as a "retail or service establishment," the specific exclusion of laundries from § 213(a)(2) is mere surplusage. Under the Secretary's reasoning, prior to 1966 laundries could not qualify as "retail or service establishment[s]"; hence, there would be no reason to specifically exclude laundries from an exemption applicable to such establishments. Yet Congress felt the need in 1966 to create such a specific exclusion. Unless we are to read those words out of the statute, we must conclude that under some circumstances a laundry could qualify as a "retail or service establishment."

Third, Congress's placement of the parenthetical excluding laundry and cleaning establishments from the § 213(a)(2) exemption is difficult to square with an intention to wholly exclude laundry and cleaning establishments from the definition of "retail or service establishment[s]." The most straightforward way to demonstrate such an intention would have been to amend the definition of "retail or service establishment" found in the second sentence of § 213(a)(2) to exclude laundry and cleaning establishments. This would ensure that laundry and cleaning establishments were excluded from that term in both § 213(a)(2) and in § 207(i). But Congress did not exclude laundries from the definition. Instead, Congress placed the exclusion in the first sentence of § 213(a)(2), among the requirements applicable solely to § 213(a)(2). We can only conclude that while Congress intended to prevent laundry and cleaning establishments from taking advantage of the § 213(a)(2) exemption, it did not intend to prevent laundries from qualifying for the § 207(i) exemption.

Moreover, the substance of the parenthetical exclusion in the first sentence of § 213(a)(2) belies a congressional intention to exclude laundry and cleaning establishments from the definition of "retail or service establishment." Congress did not simply exclude laundries from the scope of § 213(a)(2); rather, it also excluded "establishment[s] engaged in the operation of a hospital, institution, or school described in section 3(s)(4)...." § 213(a)(2). Logic suggests that if this exclusion means that laundries can never qualify as "retail or service establishment[s]," it should also mean that the schools and hospitals therein excluded cannot qualify. However, both the Secretary and construing courts have concluded that certain hospitals and schools excluded from the § 213(a)(2) exemption can qualify as "retail or service establishments" for the purposes of § 207(i). See 29 C.F.R. §§ 779.317, 779.318 (1992); Martin v. The Refrigeration Sch., 968 F.2d 3, 6–8 (9th Cir.1992). We find it difficult to believe that Congress would have chosen to express its intention that laundries could not constitute "retail or service establishment[s]" by placing laundries in an exclusionary parenthetical with other businesses that could qualify as "retail or service establishment[s]."

Finally, we believe that there is a persuasive explanation for the placement of the parenthetical and the grouping together of the laundry industry with hospitals and schools that is consistent with a laundry qualifying as a "retail or service establishment" for purposes of § 207(i). One of the prerequisites to the § 213(a)(2) exemption is that the "retail or service establishment" not constitute an "enterprise" as defined in § 203(s) of the FLSA. See 29 U.S.C. § 213(a)(2). When Congress amended § 213(a)(2) in 1966, the general definition of "enterprise" excluded businesses with gross income of less than $250,000. The definition of "enterprise" applicable to laundry and cleaning establishments, however, had no minimum income level; laundry and cleaning businesses, as well as hospitals and schools, constituted covered "enterprises" regardless of their income. Thus, the entities listed in the parenthetical exclusion to § 213(a)(2) are excluded not because they cannot qualify as "retail or service establishment[s]," but because they always constitute "enterprises" ineligible for the § 213(a)(2) exemption.

A close examination of the 1966 FLSA amendments thus convinces us that the only reading that harmonizes all of their provi-

sions is as follows: laundries can qualify as "retail or service establishment[s]" for purposes of § 207(i), but are excluded from the § 213(a)(2) exemption. Thus, we conclude there is no ironclad barrier to ACC qualifying as a retail or service establishment for purposes of § 207(i).

We recognize that "the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944). We are also aware that in its published regulations and opinion letters, the Secretary has consistently taken the position that laundries are unable to qualify as "retail or service establishment[s]." The Supreme Court further stated, however, that "[t]he weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it the power to persuade, if lacking the power to control." *Id.* We conclude that in formulating its position, the Secretary failed to thoroughly consider the effect of events subsequent to the 1949 legislative history on which it relies, and thus cannot defer to its judgment.

The Secretary also reminds us that exemptions to the FLSA should be narrowly construed. *See, e.g., A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed. 1095 (1945). As Judge Posner persuasively stated, however, "generalizations about interpretation, such as that exemptions from remedial statutes should be narrowly construed, are at best tie-breakers...." *Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1177 (7th Cir.1987). We do not think we face a tie here.

The Secretary contends, however, that in 1973 Congress considered amending § 207(i) to cover laundries, but failed to do so. The Secretary considers this failure to act to be an expression of congressional intent that laundry and cleaning businesses are not within the scope of § 207(i). *See McLaughlin v. Dill*, 696 F.Supp. 401, 405 (N.D.Ind. 1988) ("The negative implication of this bit of legislative history is the manifestation of congressional intent that laundry industry employees should receive both minimum wage and overtime compensation."). We disagree with this premise.

We do not know why Congress failed to enact these bills. Bills fail for many reasons other than disagreement with their substance. That is why we do not rely on such legislative history. *See, e.g., United States v. Price*, 361 U.S. 304, 310–12, 80 S.Ct. 326, 330–31, 4 L.Ed.2d 334 (1960).

As noted above, ACC also moved for summary judgment, claiming that it had established its status as a "retail or service establishment" as a matter of law. ACC provided evidence, from the stipulated record, that it met all of the criteria courts have developed to determine whether a business qualifies as a "retail or service establishment." The Secretary provided no contrary evidence, but instead rested on the legal argument above. The district court concluded that ACC presented evidence sufficient to sustain a finding that it was a "retail or service establishment." We find no error with this decision, and affirm it.

Therefore, we hold that ACC is entitled to pay its employees in the manner provided in § 207(i), and deny the Secretary's request for an injunction.